# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

FILED-USDC-NDTX-DA
'24 FEB 27 PM4:21
CL

Lawrence E. Hicks
Plaintiff

**3 _ 2 4 C V 0 4 6 7 - X**

v.

190
Civil Action No.

Fairfield Residential
Defendant

## COMPLAINT

1. Lawrence Hicks is a resident of Dallas County, in the state of Texas.

2. Fairfield Residential is a Business Entity, registered to do business in Dallas County, in the state of Texas.

3. This action is for Breach of Contract. It exceeds the amount of seventy-five thousand dollars, and this is being filed in UNITED STATES DISTRICT COURT in the Northern District of Texas with the proper venue and jurisdiction.

4. Plaintiff, Lawrence Hicks entered a consumer credit transaction with Defendant, Fairfield Residential, involving three apartment rental lease agreements; October 22, 2020 – September 21, 2021; October 22, 2021 – September 21, 2022; and September 22, 2022 – September 21, 2023. The total cash equivalent of the three leases amounted to forty-one thousand and sixteen dollars. (See Exhibit A, Contracts and Power of Attorney).

5. Plaintiff, Lawrence Hicks Tendered a Negotiable Instrument to Defendant, Fairfield Residential with Accord and Satisfaction as a Performance to the contract on November 15th, 2023. (See Attachment Labeled Exhibit B, Notice of Claim to Interest).

6. The Defendant, Fairfield Residential, received instructions pertaining to the Principal' s Balance and where to Transfer the Principal' s Balance to. (See Attachment Labeled Exhibit C, Tender of Payment, Opportunity to Cure)

7. The Defendant, Fairfield Residential refused to carry out Fiduciary Duties for Plaintiff Lawrence Hicks, and also refused to carry out Accord and Satisfaction per Performance (See Attachment Labeled Exhibit D, Refusal to

\* Attach additional pages as needed.

| | |
|---|---|
| Date | FEBRUARY 22, 2024 |
| Signature | |
| Print Name | Lawrence Edward Hicks |
| Address | 3525 W. Walnut Hill Lane Apt. 2029 |
| City, State, Zip | Irving, Texas 75038 |
| Telephone | 469 831 0109 |

1

Perform, Records of Non-Response)

8. The Defendant, Fairfield Residential, Breached the Contract. (Texas Civil Practice & Remedies Code Section 113.003) Cortland Partners LLC

9. Plaintiff, Lawrence Hicks, was deprived of the Goods Proceeds in the Contract Sale, in the state of Texas. (TEXAS CIVIL PRACTICE AND REMEDIES CODE, CHAPTER 41. DAMAGES)

10. The Defendant, Fairfield Residential refuses to return Negotiable Instrument back to Plaintiff.

11. The Defendant violated Texas Civil Practice and Remedies Code Section 15.092.

12. Plaintiff is seeking to have all payments reverted back to him, due to the Breach. (See Attachment Labeled Exhibit E, Past Payments).

# Damages We Are Asking For:

Wherefore the Plaintiff hereby requests from the courts and demands from the Defendant: Fairfield Residential

1) Special Performance of the Contract or Restitution of the Parties, in the amount of two million-two hundred and fifty thousand dollars.

2) That the Defendant be responsible for the cost of this action.

3) And Attorney's Fees in the amount of one-hundred and fifty-thousand dollars.

4) And whatever the court deems appropriate and just.

2

RECEIVED

FEB 2 7 2024

CLERK U.S. DIST. COURT
NORTHERN DISTRICT OF TEXAS

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HICKS, LAWRENCE E.

## DEFENDANTS

FAIRFIELD RESIDENTIAL

**(b)** County of Residence of First Listed Plaintiff    DALLAS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    DALLAS
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Self Represent

Attorneys *(If Known)*

3 - 24CV0467 - X

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☒ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 | U.S. Government Defendant | |
| ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FEDERAL RESERVE ACT SECTION 29 (a), (b), (c)   BREACH OF CONTRACT, TRUTH IN LENDING ACT, CONSUMER RIGHTS TO CREDIT
Brief description of cause:
NON-PERFORMANCE, UNSOUND PRACTICES, PATTERN OF MISCONDUCT

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$2,250,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____    DOCKET NUMBER _____

DATE    FEBRUARY 22, 2024

SIGNATURE OF ATTORNEY OF RECORD    Lawrence E. Hicks

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

3.

EXHIBIT A, CONTRACTS AND POWER OF ATTORNEY

9

# APARTMENT LEASE – 10/22/2020 – 09/21/2021

RESTRICTED ENDORSEMENT
By: Hicks : Lawrence- E/Agent
For: LAWRENCE EDWARD HICKS/Principal

**10.2 Not a Release.** The reletting charge is neither a Lease cancellation nor a buyout fee. It is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs as far as they can be determined. The reletting charge doesn't release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or dealing with unreturned keys; or other sums due.

## 11. Security Devices.

**11.1 What We Provide.** *Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peephole) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**11.2 Who Pays What.** We'll pay for missing security devices that are required by law. *You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.* You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

## 12. Other Utilities and Services.
Television channels that are provided may be changed during the Lease term if the change applies to all residents. You may use utilities only for normal household purposes and must not waste them. If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we'll attach an addendum to this Lease in compliance with state-agency rules. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $ __50.00__ charge (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If you're in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you do choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out

*guests, or our representatives who at your request perform services not contemplated in this Lease.*

**13.3 Damage and Wastewater Stoppage.** *Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements, and damage of the following kind if occurring during the Lease term or renewal period: (A) damage to doors, windows, or screens; (B) damage from windows or doors left open; and (C) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.*

**13.4 No Waiver.** We may require payment at any time, including advance payment to repair damage that you are liable for. Delay in demanding sums you owe is not a waiver.

## 14. Contractual Lien and Property Left in Apartment.

**14.1 Lien Against Your Property for Rent.** *All property in the apartment (unless exempt under Texas Property Code sec. 54.042) is subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Texas Government Code sec. 2306.6738, for owners supported by housing-tax-credit allocations).* For this purpose, "apartment" excludes common areas but includes the interior living areas and exterior patios, balconies, attached garages, and any storerooms for your exclusive use.

**14.2 Removal After We Exercise Lien for Rent.** *If your rent is delinquent, our representative may peacefully enter the apartment, and remove and/or store all property subject to lien.* All property in the apartment is presumed to be yours unless proved otherwise. After the property is removed, a written notice of entry must be left in a conspicuous place in the apartment—including a list of items removed, the amount of delinquent rent due, and the name, address, and phone number of the person to contact. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid.

**14.3 Removal After Surrender, Abandonment, or Eviction.** We, or law officers, may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you're judicially evicted or if you surrender or abandon the apartment (see definitions in Par. 41).

**14.4 Storage.**
(A) **No duty.** We'll store property removed under a contractual lien. We may—but we have no duty to—store property removed after judicial eviction, surrender, or abandonment of the apartment.
(B) **No liability.** We're not liable for casualty, loss, damage, or theft, except for property removed under a contractual lien.
(C) **Charges you pay.** You must pay reasonable charges for our packing, removing, storing, and selling of any property.
(D) **Our lien.** We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: our lien on property listed under Texas Property Code sec. 54.042 is limited to charges for packing, removing, and storing.

**14.5 Redemption.**
(A) **Property on which we have a lien.** If we've seized and stored property under a contractual lien for rent as authorized by law, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (see Par. 14.6(C)) is given before you seek redemption, you may redeem only by paying the delinquent rent plus our reasonable charges for packing, removing, and storing.
(B) **Property removed after surrender, abandonment, or judicial eviction.** If we've removed and stored property after surrender, abandonment, or judicial eviction.

(B) **Animals.** An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

(C) **Sale of property.** Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of the date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and provide the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. The sale may be public or private; is subject to any third-party ownership or lien claims; must be to the highest cash bidder; and may be in bulk, in batches, or item-by-item. If the proceeds from the sale are more than you owe, the excess amount must be mailed to you at your last known address within 30 days after sale.

**15. Failing to Pay First Month's Rent.** If you don't pay the first month's rent when or before the Lease begins, all future rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies and duties under Par. 10 and 32 apply to acceleration under this paragraph.

**16. Rent Increases and Lease Changes.** No rent increases or Lease changes are allowed before the initial Lease term ends, except for those allowed by special provisions in Par. 9, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under Par. 19. If, at least 5 days before the advance-notice deadline referred to in Par. 3, we give you written notice of rent increases or Lease changes that become effective when the Lease term or renewal period ends, this Lease will automatically continue month-to-month with the increased rent or Lease changes. The new modified Lease will begin on the date stated in the notice (without needing your signature) unless you give us written move-out notice under Par. 36. The written move-out notice under Par. 36 applies only to the end of the current Lease or renewal period.

**17. Delay of Occupancy.**

**17.1 Lease Remains In Force.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to:

(A) abatement of rent on a daily basis during delay, **and**
(B) your right to terminate the lease in writing as set forth below.

**17.2 Your Termination Rights.** Termination notice must be in writing. After termination under 17.1(B), you are entitled only to refund of any deposit(s) and any rent you paid. Rent abatement or Lease termination does not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

**17.3 Notice of Delay.** If there is a delay of your occupancy and we haven't given notice of delay as set forth immediately below, you may terminate this Lease up to the date when the apartment is ready for occupancy, but not later.

(a) If we give written notice to any of you or your occupants when or after the Lease begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease within 3 days after you receive written notice, but no later.

(b) If we give any of you written notice before the date the Lease begins and the notice states that a construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease within 7 days after receiving written no-

ing instructions for care of our property. We may regulate: (A) the use of patios, balconies, and porches; (B) the conduct of furniture movers and delivery persons; and (C) activities in common areas. We may make reasonable changes to written rules, and those rules can become effective immediately if the rules are distributed and applicable to all units in the apartment community and do not change the dollar amounts on pages 1 or 2 of this Lease.

**19.2 Some Specifics.** Your apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You will use balconies with care and will not overload them. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care and in accordance with apartment rules and posted signs.

**19.3 Limitations on Conduct.** Glass containers are prohibited in or near pools and all other common areas. Within the apartment community, you, your occupants, and your guests must not use candles or kerosene lamps or heaters without our prior written approval, or cook on balconies or outside. You, your occupants, and your guests must not solicit business or contributions. Conducting any kind of business (including child-care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes.

**19.4 Exclusion of Persons.** We may exclude from the apartment community any guests or others who, in our judgment, have been violating the law, violating this Lease or our rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an occupant, or a guest of a specific resident in the community.

**19.5 Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants are convicted of (A) any felony, or (B) any misdemeanor involving a controlled substance, violence to another person, or destruction of property. You must also notify us within 15 days if you or any of your occupants register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

**20. Prohibited Conduct.** You, your occupants, and your guests may not engage in the following activities:

(a) criminal conduct, regardless of whether or where arrest or conviction occurs, including but not limited to: manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

(b) behaving in a loud or obnoxious manner;

(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;

(d) disrupting our business operations;

(e) storing anything in closets containing gas appliances;

(f) tampering with utilities or telecommunications;

(g) bringing hazardous materials into the apartment community;

(h) using windows for entry or exit;

(i) heating the apartment with a gas-operated cooking stove or oven; **or**

(i) making bad-faith or false allegations against us or our

(f) is in a space marked for office visitors, managers, or staff;

(g) blocks another vehicle from exiting;

(h) is in a fire lane or designated "no parking" area;

(i) is in a space that requires a permit or is reserved for another resident or apartment;

(j) is on the grass, sidewalk, or patio;

(k) blocks a garbage truck from access to a dumpster;

(l) has no current license or registration, and we have given you at least 10 days' notice that the vehicle will be towed if not removed; *or*

(m) is not moved to allow parking lot maintenance.

## 22. Release of Resident.

**22.1 Generally.** *You may have the right under Texas law to terminate the Lease early in certain situations involving family violence, certain sexual offenses, or stalking.* Otherwise, unless you're entitled to terminate this Lease under Par. 9, 17, 23, 31, or 36, you won't be released from this Lease for any reason—including voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of coresidents, loss of employment, bad health, property purchase, or death.

**22.2 Death of Sole Resident.** If you are the sole resident and die during the Lease term, an authorized representative of your estate may terminate the Lease without penalty by giving at least 30 days' written notice. Your estate will be liable for your Lease obligations until the latter of: (A) the termination date or (B) removal of all possessions in the apartment. Your estate will also be liable for all charges and damages until the apartment is vacated, and any removal or storage costs.

## 23. Military Personnel.

**23.1 Termination Rights.** *You may have the right under Texas law to terminate the Lease in certain situations involving military deployment or transfer.* You may terminate the Lease if you enlist, are drafted into, or are commissioned in the U.S. Armed Forces. You also may terminate the Lease if:

(a) you are (1) a member of the U.S. Armed Forces or Reserves on active duty, or (2) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(b) you (1) receive orders for a permanent change of station, (2) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (3) are relieved or released from active duty.

**23.2 How to Terminate Under This Par. 23.** You must furnish us a copy of your military orders, such as permanent-change-of-station orders, call-up orders, or deployment orders (or letter equivalent). Military permission for base housing doesn't constitute a permanent-change-of-station order. You must deliver to us your written termination notice, after which the Lease will be terminated under this military clause 30 days after the date your next rental payment is due. After your move-out, we'll return your security deposit, less lawful deductions.

**23.3 Who May Be Released.** For the purposes of this Lease, orders described in (b) under Par. 23.1 above will release only the resident who qualifies under both (a) and (b) above and receives the orders during the Lease term, plus that resident's spouse or legal dependents living in the resident's household. A coresident who is not the spouse or dependent of a military resident cannot terminate under this military clause.

**23.4 Your Representations.** Unless you state otherwise in Par. 9, you represent when signing this Lease that:

(a) you do not already have deployment or change-of-station orders;

to follow any Security Guidelines Addendum attached to this Lease. *No security system is failsafe. Even the best systems can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. The best safety measures are the ones you take as a matter of common sense and habit.*

**24.2 Your Duty of Due Care.** You, your occupants, and your guests must exercise due care for your own and others' safety and security, especially in using smoke alarms and other detection devices, door and window locks, and other safety or security devices. Window screens are not for security or to keep people from falling out of windows.

### 24.3 Alarm and Detection Devices.

**(A)** *What we'll do.* We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing-impairment disability.

**(B)** *Your duties.* You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report alarm or detector malfunctions to us. Neither you nor others may disable alarms or detectors. *If you damage or disable the smoke alarm, or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's rent, actual damages, and attorney's fees.* You'll be liable to us and others if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

**24.4 Loss.** Unless otherwise required by law, we're not liable to any resident, guest, or occupant for personal injury or damage, loss of personal property, or loss of business or personal income, from any cause, including fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, pipe leaks, theft, vandalism, and negligent or intentional acts of residents, occupants, or guests. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, during freezing weather you must for 24 hours a day: (A) keep the apartment heated to at least 50° Fahrenheit, (B) keep cabinet and closet doors open, and (C) drip hot- and cold-water faucets. You'll be liable for any damage to our and others' property caused by broken water pipes due to your violating these requirements.

**24.5 Crime or Emergency.** Immediately dial 911 or call local medical-emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or any other emergency involving imminent harm. You should then contact our representative. None of our security measures are an express or implied warranty of security—or a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you, your occupants, or your guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obliged to furnish security personnel, patrols, lighting, gates, fences, or other forms of security unless required by law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you, your occupants, or your guests are affected by a crime, you must make a written report to the appropriate local law-enforcement agency and to our representative. You must also give us the law-enforcement agency's incident-report number upon request.

## 25. Condition of the Premises and Alterations.

**25.1 As-Is.** *We disclaim all implied warranties.* You accept the

outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite-dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

**25.3 Fair Housing.** In accordance with fair-housing laws, we'll make reasonable accommodations to our rules, policies, practices, or services. We'll allow reasonable modifications under these laws to give disabled persons access to and use of this apartment community. We may require you to sign an addendum regarding the implementation of any accommodations or modifications, as well as your restoration obligations, if any.

## 26. Requests, Repairs, and Malfunctions.

**26.1 Written Requests Required.** *If you or any occupant needs to send a notice or request—for example, for repairs, installations, services, ownership disclosure, or security-related matters—it must be written, signed, and delivered to our designated representative in accordance with our policies* (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or fair-housing accommodation or modification). Our written notes on your oral request do not constitute a written request from you. Our complying with or responding to any oral request regarding security or any other matter doesn't waive the strict requirement for written notices under this Lease.

**26.2 Required Notifications.** You must promptly notify us in writing of water leaks, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, and other conditions that pose a hazard to property, health, or safety.

**26.3 Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

**26.4 Casualty Loss and Equipment Repair.** We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your rent will not abate in whole or in part. Air-conditioning problems are normally not emergencies. If air-conditioning or other equipment malfunctions, you must notify us as soon as possible on a business day.

**26.5 Our Right to Terminate.** If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease by giving you at least 7 days' written notice. We also have the right to terminate this Lease during the Lease term by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes for at least 6 months. If the Lease is so terminated, we'll refund prorated rent and all deposits, less lawful deductions. We may also remove and dispose of personal property if we believe it causes a health or safety hazard.

## 27. Animals.

**27.1 No Animals Without Consent.** *No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community*

(not to exceed $100 per animal) and a daily charge of $ __10.00__ per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), you must pay for all cleaning and repair costs, including defleaing, deodorizing, and shampooing.

**(B) *Removal and return of animal.*** We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 28. We may keep or kennel the animal, or turn it over to a humane society, local authority or rescue organization. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges. We'll return the animal to you upon request if it has not already been turned over to a humane society, local authority or rescue organization.

**28. When We May Enter.** If you or any guest or occupant is present, then repairers, servicers, contractors, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. Law officers with a search or arrest warrant or those in hot pursuit may be allowed to enter. We are under no obligation to enter only when you are present, and we may, but are under no obligation to, give prior notice or make appointments.

**29. Multiple Residents.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or rules, all residents are considered to have violated the Lease. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant constitute notice from all residents. Your notice of Lease termination may be given only by a resident. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease will indemnify the nondefaulting residents and their guarantors.

Replacements

## 30. Replacements and Subletting.

**30.1 When Allowed.** Replacing a resident, subletting, licensing or assigning a resident's rights is allowed *only when we consent in writing.* If a departing or remaining resident finds a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(a) a reletting charge will not be due;

(b) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; *and*

(c) the departing and remaining residents will remain liable for all Lease obligations for the rest of the original Lease term.

**30.2 Procedures for Replacement.** If we approve a replacement resident, then, at our option: (A) the replacement resident must sign this Lease with or without an increase in the total security deposit; or (B) the remaining and replacement residents must sign an entirely new Lease. Unless we agree otherwise in writing, the departing resident's security deposit will automatically transfer to the replacement

### Responsibilities of Owner and Resident

### 31. Our Responsibilities.

**31.1 Generally.** We'll act with customary diligence to:
  (a) keep common areas reasonably clean, subject to Par. 25;
  (b) maintain fixtures, hot water, heating, and air-conditioning equipment;
  (c) substantially comply with all applicable laws regarding safety, sanitation, and fair housing; *and*
  (d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.
  The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.

**31.2 Your Remedies. *If we violate any of the above, you may possibly terminate this Lease and exercise other remedies under Texas Property Code Sec. 92.056 by following this procedure:***
  (a) all rent must be current, and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
  (b) if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time to repair or remedy; *and*
  (c) if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease by giving us a final written notice. *You also may exercise other statutory remedies, including those under Texas Property Code sec. 92.0561.*

**31.3 Request by Mail.** Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, by registered mail, or by any trackable mail or delivery method through the postal service or a private delivery service—after which we'll have a reasonable time to repair or remedy. "Reasonable time" accounts for the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current when you make any request. We'll refund security deposits and prorated rent as required by law.

### 32. Default by Resident.

**32.1 Acts of Default.** You'll be in default if: (A) you don't timely pay rent or other amounts you owe; (B) you or any guest or occupant violates this Lease, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (C) you abandon the apartment; (D) you give incorrect or false answers in a rental application; (E) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor; (F) any illegal drugs or paraphernalia are found in your apartment; or (G) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**32.2 Eviction.** *If you default or hold over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.* Notice may be given by: (A) regular mail; (B) certified mail, return receipt requested; (C) personal delivery to any resident; (D) personal delivery at the apartment to any occupant over 16 years old; (E) affixing the notice to the inside of the apartment's main entry door; or (F) securely affixing the notice to the outside of the apartment's main entry door as allowed by law. Notice by mail under (A) or (B) will be considered delivered on the earlier of actual delivery, or 3 days after the notice

out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all rent for the entire Lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**32.4 Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (C) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease of a new resident who can't occupy because of the holdover; and (D) at our option, we may extend the Lease term—for up to one month from the date of notice of Lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**32.5 Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means, including texting, calling your cell phone, and using an automated dialer. If you default, you will pay us, in addition to other sums due, any amounts stated to be rental discounts or concessions agreed to in writing. Upon your default, we have all other legal remedies, including Lease termination and statutory lockout under Texas Property Code sec. 92.0081, *except as lockouts and liens are prohibited by Texas Government Code sec. 2306.6738 for owners supported by housing-tax-credit allocations.* A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal-injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe, including judgments, bear 18% interest per year from the due date, compounded annually. You must pay all collection-agency fees if you fail to pay sums due within 10 days after we mail you a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline. You are also liable for a charge (not to exceed $150) to cover our time, cost and expense for the lawful removal of an animal or in any eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid.

**32.6 Mitigation of Damages.** If you move out early, you'll be subject to Par. 10 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all later rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

### General Clauses

### 33. Other Important Provisions.

**33.1 Representatives' Authority; Waivers; Notice. *Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing.*** Any dimensions and sizes provided to you relating to the

must be addressed to the email address we provide for notice purposes or submitted through an online portal.

**33.2 Miscellaneous.** All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to waive any insurance subrogation rights. All notices and documents may be in English and, at our option, in any other language that you read or speak. The term "including" in this Lease should be interpreted to mean "including but not limited to." Nothing in this Lease constitutes a waiver of our remedies for a breach under your prior lease that occurred before the lease term in Par. 3 begins.

**33.3 Severability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. Neither an invalid clause nor the omission of initials on any page invalidates this Lease.

**34. Payments.** Payment of each sum due is an independent covenant. When we receive money, other than sale proceeds under Par. 14 or water payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent and late fees are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management-company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 8). If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

## When Moving Out

### 36. Move-Out Notice.

**36.1 Requirements and Compliance.** Your move-out notice doesn't release you from liability for the full term of the Lease or renewal term. You'll still be liable for the entire Lease term if you move out early except under Par. 9, 17, 22, 23, or 31. *Your move-out notice must comply with each of the following:*

(a) We must receive advance written notice of your move-out date. You must give notice in advance by at least the number of days required in Par. 3 or in special provisions—even if the Lease has become a month-to-month lease. Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to

a written acknowledgment of your notice. If we fail to give a reminder notice, 30 days' written notice to move out is required. If we terminate the Lease, we must give you the same advance notice—unless you are in default.

**37. Move-Out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**39. Move-Out Inspection.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, Internet, television services, or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under Par. 14; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under Par. 6 and 27; government fees or fines against us for violation (by you, your occupants, or your guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; and other sums due under this Lease. You'll be liable to us for: (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10. *We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.*

### 41. Deposit Return, Surrender, and Abandonment.

**41.1 Your Deposit.** We'll mail you your security-deposit refund (less lawful deductions) and an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise.

**41.2 Surrender.** You have *surrendered* the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; *or* (B) all apartment keys and access devices listed in Par. 5 have been turned in to us—whichever happens first.

**41.3 Abandonment.** You have *abandoned* the apartment when all of the following have occurred: (A) everyone ap-

16

## SUMMARY OF KEY INFORMATION

*The Lease will control if there's a conflict with this summary.*

■ Address: **4226 House Circle APT 220**                    Unit # **2205**

■ Beginning date of Lease (Par. 3) _**10/22/2020**_          ■ Ending date of Lease (Par. 3) _**09/21/2021**_

■ Number of days notice for termination (Par. 3) _**60**_    ■ Consent for guests staying more than _**7**_ days (Par. 2)

■ Total security deposit (Par. 4)   $ _**100.00**_           ■ Animal deposit (if any)   $ _____

■ Security deposit refund check will be by (Par. 4) ☐ does **OR** ☒ does not include an animal deposit.

■ Security deposit refund check will be by (Par. 4) (*check one*) ☒ one check jointly payable to all residents (default),
**OR** ☐ one check payable to and mailed to _____

■ # of keys/access devices (Par. 5) for _**2**_ unit, _**2**_ mailbox, _**1**_ other **Gate Card**

■ Your move-out notice will terminate Lease on (Par. 5): (*check one*) ☐ last day of month **OR** ☒ exact day designated in notice

■ Check here ☐ if the dwelling is to be furnished (Par. 5)   ■ Check here ☐ if there is a concession addendum

■ Rent to be paid (Par. 6): (*check all that apply*) ☐ at the onsite manager's office, ☒ through our online payment site, **OR**
☐ at _____

■ Check here if included in monthly rent: ☐ garage, ☐ storage, ☐ carport, ☐ washer/dryer, or ☐ other _____

■ Total monthly rent (Par. 6)   $ _**1015.00**_             ■ Prorated rent (Par. 6) for (*check one*)

■ Late fees if rent is not paid on or before (Par. 6)  _**3rd**_   ☐ first month **OR** ☐ second month  $ _**327.42**_

■ Initial late fee (Par. 6)   $ _____ or _**10**_ %        ■ Daily late fee (Par. 6)   $ _____ or _____ %

■ Returned-check charge (Par. 6)   $ _**75.00**_            ■ Animal violation charges (Par. 27)

■ Monthly animal rent (if any)   $ _____                  Initial $ _**100.00**_  Daily $ _**10.00**_

■ Monthly pest control (if any)   $ _**0.00**_             ■ Monthly trash / waste (if any)   $ _**0.00**_

■ Utilities paid by owner (Par. 7): (*check all that apply*) ☐ electricity, ☐ gas, ☒ water, ☒ wastewater, ☒ trash/recycling,
☐ cable/satellite, ☐ master antenna, ☐ Internet, ☐ stormwater/drainage, ☒ other **Valet Trash**

■ Utility connection charge (Par. 12)   $ _**50.00**_       ■ You are: (*check one*) ☒ required to buy insurance **OR**

■ Agreed reletting charge (Par. 10)   $ _____             ☐ not required to buy insurance (Par. 8)

■ Special provisions (Par. 9): **Resident Tip Sheet attached & binding. No checks accepted after the 3rd day of the month or 2nd NSF. This property utilizes Amazon Lockers for package delivery; therefore we are unable to sign for or accept packages at the mgmt. office on your behalf. Resident(s) must make arrangements with carrier for packages that exceed locker capacity (see add provisions).**

## Signatures and Attachments

**42. Attachments.** We will provide you with a copy of the Lease as required by statute. This may be in paper format, in an electronic format if you request it, or by e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease and are binding even if not initialed or signed.
- ☐ Access Gate Addendum
- ☐ Additional Special Provisions
- ☐ Allocation Addendum for: ☐ electricity ☐ water ☐ gas
  ☐ central system costs ☐ trash/recycling ☐ cable/satellite
  ☐ stormwater/drainage ☐ services/government fees
- ☒ Animal Addendum
- ☒ Apartment Rules or Community Policies
- ☐ Asbestos Addendum (if asbestos is present)
- ☒ Bed Bug Addendum
- ☒ Early Termination Addendum
- ☒ Enclosed Garage, Carport, or Storage Unit Addendum
- ☐ Intrusion Alarm Addendum
- ☒ Inventory & Condition Form
- ☐ Lead Hazard Information and Disclosure Addendum
- ☐ Lease Contract Addendum for Units Participating in Government Regulated Affordable Housing Programs
- ☐ Lease Contract Guaranty (guaranties, if more than one)
- ☐ Legal Description of Apartment (optional, if rental term longer than one year)
- ☐ Military SCRA Addendum
- ☒ Mold Information and Prevention Addendum
- ☐ Move-Out Cleaning Instructions
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity:_____)
- ☒ Rent Concession Addendum
- ☒ Renter's or Liability Insurance Addendum
- ☐ Repair or Service Request Form
- ☒ Satellite Dish or Antenna Addendum
- ☒ Security Guidelines Addendum

**43. Class Action Waiver.** You agree that you will not participate in any class action claims against us or our representatives. You must file any claim against us individually, and *you expressly waive your ability to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.*

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. *BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY.* THE PROVISIONS OF THIS PAR. 43 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

Resident initials: _____

**You are legally bound by this document. Please read it carefully. A facsimile or electronic signature on this Lease is as binding as an original signature.**

**Before submitting a rental application or signing a Lease, you may take a copy of these documents to review and/or consult an attorney. Additional provisions or changes may be made in the Lease if agreed to in writing by all parties.**

**You are entitled to receive a copy of this Lease after it is fully signed. Keep it in a safe place. This lease is the entire agreement between you and us. You are NOT relying on any oral representations.**

*Resident or Residents* (*all sign below*)

_Lawrence Edward Hicks_                      10/22/2020
(Name of Resident)                            Date signed

_____                       _____
(Name of Resident)                            Date signed

_____                       _____
(Name of Resident)                            Date signed

# APARTMENT LEASE – 10/22/2021 – 09/21/2022



*Accepted For Deposit*

*This Lease Contract is valid only if filled out before January 1, 2022.*

TEXAS APARTMENT ASSOCIATION
M   E   M   B   E   R

## Apartment Lease Contract

This is a binding contract. Read carefully before signing.

### Moving In — General Information

**1. Parties.** This Lease Contract ("Lease") is between you, the resident(s) (*list all people signing the Lease*):

**Lawrence Edward Hicks**

*Accepted For Value*

and us, the owner **Fairfield Las Brisas I LLC dba Kensley Apartment Homes I**

(name of apartment community or title holder). You are renting Apartment No. **2205**, at **4226 Club House Circle APT 220**

(street address) in **Irving**

(city), Texas **75038** (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above or, in the event of a sole resident's death, to someone authorized to act for the estate. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease is the entire agreement between you and us.*

**2. Occupants.** The apartment will be occupied only by you and (*list all other occupants not signing the Lease*):

*Pay to the Bearer
Pay On Demand*

—and no one else. Anyone not listed here cannot stay in the apartment for more than __7__ days in one week without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, 2 days total per week will be the limit.*

**3. Lease Term.** The initial term of the Lease begins on the **22nd** day of **October** (month), **2021** (year), and ends at 11:59 p.m. the **21st** day of **September** (month), **2022** (year). After that, this Lease will automatically renew month-to-month unless either party gives at least __60__ days' written notice of termination or intent to move out as required by Par. 36. *If the number of days isn't filled in, notice of at least 30 days is required.*

**4. Security Deposit.** The total security deposit for all residents is $ **100.00** due on or before the date this Lease is signed. This amount (*check one*): ☐ does or ☒ does not include an animal deposit. Any animal deposit will be designated in an animal addendum. Security-deposit refund check and any deduction itemizations will be by (*check one*): ☒ one check jointly payable to all residents and mailed to any one resident we choose, *or* ☐ one check payable to and mailed to _____

(specify name of one resident)
If neither option is checked here, the first option applies. See Par. 40 and 41 for security-deposit return information.

**5. Keys, Move-Out, and Furniture.** You'll be given __2__ apartment key(s), __2__ mailbox key(s), and __1__ other access devices for **Gate Card**

*Before moving out, you must give our representative advance written move-out notice as stated in Par. 36.* The move-out date in your notice (*check one*): ☐ must be the last day of the month, or ☒ may be the exact day designated in your notice. If neither option is checked here, the second applies. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order not to enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices, unless authorized by court order. Your apartment will be (*check one*): ☐ furnished or ☒ unfurnished.

**6. Rent and Charges.** You will pay $ **1110.00** per month for rent, in advance and without demand:
☐ at the onsite manager's office
☒ through our online payment site
☐ at _____

Prorated rent of $ **358.06** is due for the remainder of the (*check one*): ☐ 1st month *or* ☐ 2nd month, on the ___ day of _____ (month), ___ (year).

*You must pay your rent on or before the 1st day of each month (due date). There is no grace period for the payment of rent, and you agree that not paying rent on or before the 1st of each month is a material breach of this Lease. Cash is not acceptable without our prior written permission. You cannot withhold or offset rent unless authorized by law.* We may, at our option, require at any time that you pay all rent and other sums in one single payment by any method we specify.

**Late Fees.** If you don't pay rent in full by 11:59 p.m. on the __3rd__ day (3rd or greater) of the month, you must pay us the following initial late fee immediately and without demand in addition to the unpaid rent: ☒ __10__ % of one month's rent as stated in this paragraph or ☐ $ _____

In addition, for _____ days until rent and late fees are paid in full, you must pay a daily late fee of $ _____ per day or _____ % of one month's rent per day.

You'll also pay a charge of $ __75.00__ for each returned check or rejected electronic payment, plus initial and daily late fees, until we receive acceptable payment. If you don't pay rent on time, you'll be in default and subject to all remedies under state law and this Lease.

**7. Utilities and Services.** We'll pay for the following items, if checked: ☐ gas ☐ water ☐ wastewater ☐ electricity ☐ trash/recycling ☐ cable/satellite ☐ master antenna ☐ internet ☐ stormwater/drainage ☐ other

You'll pay for all other utilities and services, related deposits, and any charges or fees on such utilities and services during your Lease term. See Par. 12 for other related provisions regarding utilities and services.

**8. Insurance.** *Our insurance doesn't cover the loss of or damage to your personal property.* You are (*check one*):
☒ required to buy and maintain renter's or liability insurance (see attached addendum), *or*
☐ not required to buy renter's or liability insurance.

*If neither option is checked, insurance is not required but is still strongly recommended. Even if not required, we urge you to get your own insurance for losses due to theft, fire, water, pipe leaks, and similar occurrences.* Renter's insurance doesn't cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.

**9. Special Provisions.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease and will supersede any conflicting provisions of this printed Lease form.

**Resident Tip Sheet attached & binding. No checks accepted after the 3rd day of the month or 2nd NSF. This property utilizes Amazon Lockers for package delivery; therefore we are unable to sign for or accept packages at the mgmt. office on your behalf. Resident(s) must make arrangements with carrier for packages that exceed locker capacity (see add provisions).**

_____
_____

**10. Unlawful Early Move-Out And Reletting Charge.**

**10.1 Your Responsibility.** You'll be liable for a reletting charge of $ _____ (not to exceed 85% of the highest monthly rent during the Lease term) if you: (A) fail to move in, or fail to give written move-out notice as required in Par. 23 or 36; (B) move out without paying rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. *The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease. See the next section.*

18

Your Initials: _____   Initials of Our Representative: _____   Apartment Lease Contract ©2019, Texas Apartment Association, Inc.   Page 1 of 6

RESTRICTED ENDORSEMENT
By: Hicks: Lawrence-E /Agent
For: LAWRENCE EDWARD HICKS /Principal
(WITHOUT RECOURSE)

24

**10.2 Not a Release.** The reletting charge is neither a Lease cancellation nor a buyout fee. It is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs as far as they can be determined. The reletting charge doesn't release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or dealing with unreturned keys; or other sums due.

### 11. Security Devices.

**11.1 What We Provide.** Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that *we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peephole) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door.* Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, *you have the right to do so and deduct the reasonable cost from your next rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**11.2 Who Pays What.** We'll pay for missing security devices that are required by law. *You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.* You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

### 12. Other Utilities and Services.
Television channels that are provided may be changed during the Lease term if the change applies to all residents. You may use utilities only for normal household purposes and must not waste them. If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we'll attach an addendum to this Lease in compliance with state-agency rules. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $ __50.00__ charge (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If you're in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you do choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

**Special Provisions and "What If" Clauses**

### 13. Damages and Reimbursement.

**13.1 Damage in the Apartment Community.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease or rules violation; improper use; negligence; other conduct by you, your invitees, your occupants, or your guests; or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

**13.2 Indemnification by You.** *You'll defend, indemnify and hold us harmless from all liability arising from your conduct or that of your invitees, your occupants, your*

guests, or our representatives who at your request perform services not contemplated in this Lease.

**13.3 Damage and Wastewater Stoppage.** *Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements, and damage of the following kind if occurring during the Lease term or renewal period: (A) damage to doors, windows, or screens; (B) damage from windows or doors left open; and (C) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.*

**13.4 No Waiver.** We may require payment at any time, including advance payment to repair damage that you are liable for. Delay in demanding sums you owe is not a waiver.

### 14. Contractual Lien and Property Left in Apartment.

**14.1 Lien Against Your Property for Rent.** *All property in the apartment (unless exempt under Texas Property Code sec. 54.042) is subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Texas Government Code sec. 2306.6738, for owners supported by housing-tax-credit allocations).* For this purpose, "apartment" excludes common areas but includes the interior living areas and exterior patios, balconies, attached garages, and any storerooms for your exclusive use.

**14.2 Removal After We Exercise Lien for Rent.** *If your rent is delinquent, our representative may peacefully enter the apartment, and remove and/or store all property subject to lien.* All property in the apartment is presumed to be yours unless proved otherwise. After the property is removed, a written notice of entry must be left in a conspicuous place in the apartment—including a list of items removed, the amount of delinquent rent due, and the name, address, and phone number of the person to contact. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid.

**14.3 Removal After Surrender, Abandonment, or Eviction.** We, or law officers, may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you're judicially evicted or if you surrender or abandon the apartment (see definitions in Par. 41).

**14.4 Storage.**
(A) *No duty.* We'll store property removed under a contractual lien. We may—but we have no duty to—store property removed after judicial eviction, surrender, or abandonment of the apartment.
(B) *No liability.* We're not liable for casualty, loss, damage, or theft. except for property removed under a contractual lien.
(C) *Charges you pay.* You must pay reasonable charges for our packing, removing, storing, and selling of any property.
(D) *Our lien.* We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: our lien on property listed under Texas Property Code sec. 54.042 is limited to charges for packing, removing, and storing.

**14.5 Redemption.**
(A) *Property on which we have a lien.* If we've seized and stored property under a contractual lien for rent as authorized by law, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (see Par. 14.6(C)) is given before you seek redemption, you may redeem only by paying the delinquent rent plus our reasonable charges for packing, removing, and storing.
(B) *Property removed after surrender, abandonment, or judicial eviction.* If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late fees, reletting charges, storage charges, damages, etc.
(C) *Place and payment for return.* We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**14.6 Disposition or Sale.**
(A) *Our options.* Except for animals, we may throw away or give to a charitable organization all personal property that is:
(1) left in the apartment after surrender, abandonment or death of a sole resident; or
(2) left outside more than 1 hour after writ of possession is executed, following judicial eviction.

(B) **Animals.** An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

(C) **Sale of property.** Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of the date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and provide the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. The sale may be public or private; is subject to any third-party ownership or lien claims; must be to the highest cash bidder; and may be in bulk, in batches, or item-by-item. If the proceeds from the sale are more than you owe, the excess amount must be mailed to you at your last known address within 30 days after sale.

**15. Failing to Pay First Month's Rent.** If you don't pay the first month's rent when or before the Lease begins, all future rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies and duties under Par. 10 and 32 apply to acceleration under this paragraph.

**16. Rent Increases and Lease Changes.** No rent increases or Lease changes are allowed before the initial Lease term ends, except for those allowed by special provisions in Par. 9, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under Par. 19. If, at least 5 days before the advance-notice deadline referred to in Par. 3, we give you written notice of rent increases or Lease changes that become effective when the Lease term or renewal period ends, this Lease will automatically continue month-to-month with the increased rent or Lease changes. The new modified Lease will begin on the date stated in the notice (without needing your signature) unless you give us written move-out notice under Par. 36. The written move-out notice under Par. 36 applies only to the end of the current Lease or renewal period.

**17. Delay of Occupancy.**

**17.1 Lease Remains in Force.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to:

(A) abatement of rent on a daily basis during delay, **and**
(B) your right to terminate the lease in writing as set forth below.

**17.2 Your Termination Rights.** Termination notice must be in writing. After termination under 17.1(B), you are entitled only to refund of any deposit(s) and any rent you paid. Rent abatement or Lease termination does not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

**17.3 Notice of Delay.** If there is a delay of your occupancy and we haven't given notice of delay as set forth immediately below, you may terminate this Lease up to the date when the apartment is ready for occupancy, but not later.

(a) If we give written notice to any of you or your occupants when or after the Lease begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease within 3 days after you receive written notice, but no later.

(b) If we give any of you written notice before the date the Lease begins and the notice states that a construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease within 7 days after receiving written notice, but no later. The readiness date stated in the written notice becomes the new effective Lease date for all purposes. This new date can't be moved to an earlier date unless we and you agree in writing.

**18. Disclosure of Information.** We may, but are not obligated to, share and use information related to this lease for law-enforcement, governmental, or business purposes. At our request, any utility provider may give us information about pending or actual connections or disconnections of utility service to your apartment.

---

### While You're Living in the Apartment

---

**19. Community Policies and Rules.**

**19.1 Generally.** Our rules are considered part of this Lease. You, your occupants, and your guests must comply with all written apartment rules and community policies, including instructions for care of our property. We may regulate: (A) the use of patios, balconies, and porches; (B) the conduct of furniture movers and delivery persons; and (C) activities in common areas. We may make reasonable changes to written rules, and those rules can become effective immediately if the rules are distributed and applicable to all units in the apartment community and do not change the dollar amounts on pages 1 or 2 of this Lease.

**19.2 Some Specifics.** Your apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You will use balconies with care and will not overload them. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care and in accordance with apartment rules and posted signs.

**19.3 Limitations on Conduct.** Glass containers are prohibited in or near pools and all other common areas. Within the apartment community, you, your occupants, and your guests must not use candles or kerosene lamps or heaters without our prior written approval, or cook on balconies or outside. You, your occupants, and your guests must not solicit business or contributions. Conducting any kind of business (including child-care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes.

**19.4 Exclusion of Persons.** We may exclude from the apartment community any guests or others who, in our judgment, have been violating the law, violating this Lease or our rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an occupant, or a guest of a specific resident in the community.

**19.5 Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants are convicted of (A) any felony, or (B) any misdemeanor involving a controlled substance, violence to another person, or destruction of property. You must also notify us within 15 days if you or any of your occupants register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

**20. Prohibited Conduct.** You, your occupants, and your guests may not engage in the following activities:

(a) criminal conduct, regardless of whether or where arrest or conviction occurs, including but not limited to: manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

(b) behaving in a loud or obnoxious manner;

(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;

(d) disrupting our business operations;

(e) storing anything in closets containing gas appliances;

(f) tampering with utilities or telecommunications;

(g) bringing hazardous materials into the apartment community;

(h) using windows for entry or exit;

(i) heating the apartment with a gas-operated cooking stove or oven; **or**

(j) making bad-faith or false allegations against us or our agents to others.

**21. Parking.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes must not be parked inside an apartment, on sidewalks, under stairwells, or in handicapped-parking areas. We may have any unauthorized or illegally parked vehicles towed or booted according to state law at the owner or operator's expense at any time if the vehicle:

(a) has a flat tire or is otherwise inoperable;

(b) is on jacks, on blocks, or has a wheel missing;

(c) takes up more than one parking space;

(d) belongs to a resident or occupant who has surrendered or abandoned the apartment;

(e) is in a handicapped space without the legally required handicapped insignia;

(f) is in a space marked for office visitors, managers, or staff;

(g) blocks another vehicle from exiting;

(h) is in a fire lane or designated "no parking" area;

(i) is in a space that requires a permit or is reserved for another resident or apartment;

(j) is on the grass, sidewalk, or patio;

(k) blocks a garbage truck from access to a dumpster;

(l) has no current license or registration, and we have given you at least 10 days' notice that the vehicle will be towed if not removed; or

(m) is not moved to allow parking lot maintenance.

## 22. Release of Resident.

**22.1 Generally.** *You may have the right under Texas law to terminate the Lease early in certain situations involving family violence, certain sexual offenses, or stalking.* Otherwise, unless you're entitled to terminate this Lease under Par. 9, 12, 23, 31, or 36, you won't be released from this Lease for any reason—including voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of coresidents, loss of employment, bad health, property purchase, or death.

**22.2 Death of Sole Resident.** If you are the sole resident and die during the Lease term, an authorized representative of your estate may terminate the Lease without penalty by giving at least 30 days' written notice. Your estate will be liable for your Lease obligations until the latter of: (A) the termination date or (B) removal of all possessions in the apartment. Your estate will also be liable for all charges and damages until the apartment is vacated, and any removal or storage costs.

## 23. Military Personnel.

**23.1 Termination Rights.** *You may have the right under Texas law to terminate the Lease in certain situations involving military deployment or transfer.* You may terminate the Lease if you enlist, are drafted into, or are commissioned in the U.S. Armed Forces. You also may terminate the Lease if:

(a) you are (1) a member of the U.S. Armed Forces or Reserves on active duty, or (2) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(b) you (1) receive orders for a permanent change of station, (2) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (3) are relieved or released from active duty.

**23.2 How to Terminate Under This Par. 23.** You must furnish us a copy of your military orders, such as permanent-change-of-station orders, call-up orders, or deployment orders (or letter equivalent). Military permission for base housing doesn't constitute a permanent-change-of-station order. You must deliver to us your written termination notice, after which the Lease will be terminated under this military clause 30 days after the date your next rental payment is due. After your move-out, we'll return your security deposit, less lawful deductions.

**23.3 Who May Be Released.** For the purposes of this Lease, orders described in (b) under Par. 23.1 above will release only the resident who qualifies under both (a) and (b) above and receives the orders during the Lease term, plus that resident's spouse or legal dependents living in the resident's household. A coresident who is not the spouse or dependent of a military resident cannot terminate under this military clause.

**23.4 Your Representations.** Unless you state otherwise in Par. 9, you represent when signing this Lease that:

(a) you do not already have deployment or change-of-station orders;

(b) you will not be retiring from the military during the Lease term; and

(c) the term of your enlistment or obligation will not end before the Lease term ends.

You must notify us immediately if you are called to active duty or receive deployment or permanent-change-of-station orders.

**23.5 Damages for False Representations.** Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the Lease term when and if you move out, minus rents from others received in mitigation under Par. 32.6.

## 24. Resident Safety and Loss.

**24.1 Disclaimer.** *We disclaim any express or implied warranties of security.* We care about your safety and that of other occupants and guests. You agree to make every effort

to follow any Security Guidelines Addendum attached to this Lease. *No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. The best safety measures are the ones you take as a matter of common sense and habit.*

**24.2 Your Duty of Due Care.** You, your occupants, and your guests must exercise due care for your own and others' safety and security, especially in using smoke alarms and other detection devices, door and window locks, and other safety or security devices. Window screens are not for security or to keep people from falling out of windows.

**24.3 Alarm and Detection Devices.**

(A) *What we'll do.* We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing-impairment disability.

(B) *Your duties.* You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report alarm or detector malfunctions to us. Neither you nor others may disable alarms or detectors. *If you damage or disable the smoke alarm, or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's rent, actual damages, and attorney's fees.* You'll be liable to us and others if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

**24.4 Loss.** Unless otherwise required by law, we're not liable to any resident, guest, or occupant for personal injury or damage, loss of personal property, or loss of business or personal income, from any cause, including fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, pipe leaks, theft, vandalism, and negligent or intentional acts of residents, occupants, or guests. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, during freezing weather you must for 24 hours a day: (A) keep the apartment heated to at least 50° Fahrenheit, (B) keep cabinet and closet doors open, and (C) drip hot- and cold-water faucets. You'll be liable for any damage to our and others' property caused by broken water pipes due to your violating these requirements.

**24.5 Crime or Emergency.** Immediately dial 911 or call local medical-emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or any other emergency involving imminent harm. You should then contact our representative. None of our security measures are an express or implied warranty of security—or a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you, your occupants, or your guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obliged to furnish security personnel, patrols, lighting, gates, fences, or other forms of security unless required by law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you, your occupants, or your guests are affected by a crime, you must make a written report to the appropriate local law-enforcement agency and to our representative. You must also give us the law-enforcement agency's incident-report number upon request.

## 25. Condition of the Premises and Alterations.

**25.1 As-Is.** *We disclaim all implied warranties.* You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You'll be given an Inventory & Condition form on or before move-in. Within 48 hours after move-in, you must note on the form all defects or damage, sign the form, and return it to us. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

**25.2 Standards and Improvements.** You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by law or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless our rules state otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and grooves of wood-paneled walls. No water furniture, washing machines, extra phone or television

outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite-dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

**25.3 Fair Housing.** In accordance with fair-housing laws, we'll make reasonable accommodations to our rules, policies, practices, or services. We'll allow reasonable modifications under these laws to give disabled persons access to and use of this apartment community. We may require you to sign an addendum regarding the implementation of any accommodations or modifications, as well as your restoration obligations, if any.

## 26. Requests, Repairs, and Malfunctions.

**26.1 Written Requests Required.** *If you or any occupant needs to send a notice or request—for example, for repairs, installations, services, ownership disclosure, or security-related matters—it must be written, signed, and delivered to our designated representative in accordance with our policies* (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or fair-housing accommodation or modification). Our written notes on your oral request do not constitute a written request from you. Our complying with or responding to any oral request regarding security or any other matter doesn't waive the strict requirement for written notices under this Lease.

**26.2 Required Notifications.** You must promptly notify us in writing of water leaks, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, and other conditions that pose a hazard to property, health, or safety.

**26.3 Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

**26.4 Casualty Loss and Equipment Repair.** We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your rent will not abate in whole or in part. Air-conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify us as soon as possible on a business day.

**26.5 Our Right to Terminate.** If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease by giving you at least 7 days' written notice. We also have the right to terminate this Lease during the Lease term by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes. If at least 6 months. If the Lease is so terminated, we'll refund prorated rent and all deposits, less lawful deductions. We may also remove and dispose of personal property if we believe it causes a health or safety hazard.

## 27. Animals.

**27.1 No Animals Without Consent.** *No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.* If we allow an animal, you must sign a separate animal addendum and, except as set forth in the addendum, pay an animal deposit. An animal deposit is considered a general security deposit. The animal addendum includes information governing animals, including assistance or service animals. We'll authorize an assistance or support animal for a disabled person without requiring an animal deposit. We may require verification of your disability and the need for such an animal. You must not feed stray or wild animals.

**27.2 Violations of Animal Policies.**

(A) *Charges for violations.* If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease. If you violate the animal restrictions or other animal rules, you'll pay an initial charge of $ __100.00__ per animal

(not to exceed $100 per animal) and a daily charge of $ __10.00__ per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), you must pay for all cleaning and repair costs, including defleaing, deodorizing, and shampooing.

(B) *Removal and return of animal.* We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 28. We may keep or kennel the animal, or turn it over to a humane society, local authority or rescue organization. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges. We'll return the animal to you upon request if it has not already been turned over to a humane society, local authority or rescue organization.

28. **When We May Enter.** If you or any guest or occupant is present, then repairers, servicers, contractors, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. Law officers with a search or arrest warrant or those in hot pursuit may be allowed to enter. We are under no obligation to enter only when you are present, and we may, but are under no obligation to, give prior notice or make appointments.

29. **Multiple Residents.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or rules, all residents are considered to have violated the Lease. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant constitute notice from all residents. Your notice of Lease termination may be given only by a resident. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease will indemnify the nondefaulting residents and their guarantors.

## Replacements

## 30. Replacements and Subletting.

**30.1 When Allowed.** Replacing a resident, subletting, licensing or assigning a resident's rights is allowed **only when we consent in writing.** If a departing or remaining resident finds a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(a) a reletting charge will not be due;

(b) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; *and*

(c) the departing and remaining residents will remain liable for all Lease obligations for the rest of the original Lease term.

**30.2 Procedures for Replacement.** If we approve a replacement resident, then, at our option: (A) the replacement resident must sign this Lease with or without an increase in the total security deposit; or (B) the remaining and replacement residents must sign an entirely new Lease. Unless we agree otherwise in writing, the departing resident's security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or to a security-deposit refund, but will remain liable for the remainder of the original Lease term unless we agree otherwise in writing—even if a new Lease is signed.

**30.3 Rental Prohibited.** You agree that you won't rent, or offer to rent or license all or any part of your apartment to anyone else unless otherwise agreed to by us in writing. You agree that you won't accept anything of value from anyone else for the use of any part of your apartment. You agree not to list any part of your apartment on any lodging rental website or with any person or service that advertises dwellings for rent.

## Responsibilities of Owner and Resident

### 31. Our Responsibilities.

**31.1 Generally.** We'll act with customary diligence to:
(a) keep common areas reasonably clean, subject to Par. 25;
(b) maintain fixtures, hot water, heating, and air-conditioning equipment;
(c) substantially comply with all applicable laws regarding safety, sanitation, and fair housing; *and*
(d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.
The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.

**31.2 Your Remedies. *If we violate any of the above, you may possibly terminate this Lease and exercise other remedies under Texas Property Code Sec. 92.056 by following this procedure:***
(a) all rent must be current, and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
(b) if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time to repair or remedy; *and*
(c) if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease by giving us a final written notice. *You also may exercise other statutory remedies, including those under Texas Property Code sec. 92.0561.*

**31.3 Request by Mail.** Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, by registered mail, or by any trackable mail or delivery method through the postal service or a private delivery service—after which we'll have a reasonable time to repair or remedy. "Reasonable time" accounts for the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current when you make any request. We'll refund security deposits and prorated rent as required by law.

### 32. Default by Resident.

**32.1 Acts of Default.** You'll be in default if: (A) you don't timely pay rent or other amounts you owe; (B) you or any guest or occupant violates this Lease, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (C) you abandon the apartment; (D) you give incorrect or false answers in a rental application; (E) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor; (F) any illegal drugs or paraphernalia are found in your apartment; or (G) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**32.2 Eviction. *If you default or hold over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.*** Notice may be given by: (A) regular mail; (B) certified mail, return receipt requested; (C) personal delivery to any resident; (D) personal delivery at the apartment to any occupant over 16 years old; (E) affixing the notice to the inside of the apartment's main entry door; or (F) securely affixing the notice to the outside of the apartment's main entry door as allowed by law. Notice by mail under (A) or (B) will be considered delivered on the earlier of actual delivery, or 3 days after the notice is deposited in the U.S. Postal Service with postage. Termination of your possession rights or a later reletting doesn't release you from liability for future rent or other Lease obligations. *After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due;* the filing or acceptance doesn't waive or diminish our right of eviction or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, to past or future rent or other sums, or to our continuing with eviction proceedings. *In an eviction, rent is owed for the full rental period and will not be prorated.*

**32.3 Acceleration.** Unless we elect not to accelerate rent, all monthly rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (A) you move out, remove property in preparing to move

out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all rent for the entire Lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**32.4 Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (C) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease of a new resident who can't occupy because of the holdover; and (D) at our option, we may extend the Lease term—for up to one month from the date of notice of Lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**32.5 Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means, including texting, calling your cell phone, and using an automated dialer. If you default, you will pay us, in addition to other sums due, any amounts stated to be rental discounts or concessions agreed to in writing. Upon your default, we have all other legal remedies, including Lease termination and statutory lockout under Texas Property Code sec. 92.0081, *except as lockouts and liens are prohibited by Texas Government Code sec. 2306.6738 for owners supported by housing-tax-credit allocations.* A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal-injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe, including judgments, bear 18% interest per year from the due date, compounded annually. You must pay all collection-agency fees if you fail to pay sums due within 10 days after we mail you a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline. You are also liable for a charge (not to exceed $150) to cover our time, cost and expense for the lawful removal of an animal or in any eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid.

**32.6 Mitigation of Damages.** If you move out early, you'll be subject to Par. 10 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all later rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

### 33. Other Important Provisions.

**33.1 Representatives' Authority; Waivers; Notice. *Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing.*** Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates; actual dimensions and sizes may vary. No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. *Our choice to enforce, not enforce or delay enforcement of written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.* Except when notice or demand is required by law, you waive any notice and demand for performance from us if you default. If anyone else has guaranteed performance of this Lease, a separate Lease Guaranty for each guarantor must be executed. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease should keep a copy or record of it. Fax or other electronic signatures are binding. All notices must be signed. Notice may be given electronically *by us to you* if allowed by law. If allowed by law and in accordance with our policies, electronic notice *from you to us*

must be addressed to the email address we provide for notice purposes or submitted through an online portal.

**33.2 Miscellaneous.** All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to waive any insurance subrogation rights. All notices and documents may be in English and, at our option, in any other language that you read or speak. The term "including" in this Lease should be interpreted to mean "including but not limited to." Nothing in this Lease constitutes a waiver of our remedies for a breach under your prior lease that occurred before the lease term in Par. 3 begins.

**33.3 Severability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. Neither an invalid clause nor the omission of initials on any page invalidates this Lease.

**34. Payments.** Payment of each sum due is an independent covenant. When we receive money, other than sale proceeds under Par. 14 or water payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent and late fees are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management-company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 8). If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

---

## When Moving Out

**36. Move-Out Notice.**

**36.1 Requirements and Compliance.** Your move-out notice doesn't release you from liability for the full term of the Lease or renewal term. You'll still be liable for the entire Lease term if you move out early except under Par. 9, 17, 22, 23, or 31. *Your move-out notice must comply with each of the following:*

  (a) We must receive advance written notice of your move-out date. You must give notice in advance by at least the number of days required in Par. 3 or in special provisions—even if the Lease has become a month-to-month lease. Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, it will suffice for move-out on the last day of that month, as long as all other requirements below are met.

  (b) Your move-out notice must be in writing. An oral move-out notice will not be accepted and will not terminate your Lease.

  (c) Your move-out notice must not terminate the Lease sooner than the end of the Lease term or renewal period.

  (d) If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move-out is required.

**36.2 Unacceptable Notice.** *Your notice is not acceptable if it doesn't comply with all of the above.* We recommend that you use our written move-out form to ensure that you provide all the information needed. You must get from us

a written acknowledgment of your notice. If we fail to give a reminder notice, 30 days' written notice to move out is required. If we terminate the Lease, we must give you the same advance notice—unless you are in default.

**37. Move-Out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**39. Move-Out Inspection.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, internet, television services, or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under Par. 14; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under Par. 6 and 27; government fees or fines against us for violation (by you, your occupants, or your guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; and other sums due under this Lease. You'll be liable to us for: (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10. *We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.*

**41. Deposit Return, Surrender, and Abandonment.**

**41.1 Your Deposit.** We'll mail you your security-deposit refund (less lawful deductions) and an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise.

**41.2 Surrender.** You have *surrendered* the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; *or* (B) apartment keys and access devices listed in Par. 5 have been turned in to us—whichever happens first.

**41.3 Abandonment.** You have *abandoned* the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (C) you've been in default for nonpayment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; *and* (D) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**41.4 The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (Par. 14), but don't affect our mitigation obligations (Par. 32).

must be addressed to the email address we provide for no-    a written acknowledgement of your notice. If we fail to give

■ Check here if...

■ Late fees if rent is not paid on or before (Par. 6)    3rd    Prorated rent (Par. 6) for (check one)

■ Monthly animal rent (if any)    $    Initial $    100.00    Daily $    10.00
■ Monthly pest control (if any)    $    0.00    Monthly...

☐ cable/satellite, ☐ master antenna, ☐ Internet, ☐ stormwater/drainage, ☐ other
■ Utility connection charge (Par. 13)    50.00
■ ...

* Special provisions of 9) Resident Tip Sheet attached, a binding. No checks accepted after the
3rd day of the month or 2nd NSF. This property utilizes Amazon lockers for package
delivery, therefore we are unable to sign for or accept packages at the mgmt. office
on your behalf. Resident(s) must make arrangements with carrier for packages that
exceed locker capacity (see add provisions).

## Signatures and Attachments

**42. Attachments.** We will provide you with a copy of the Lease as required by statute. This may be in paper format, in an electronic format if you request it, or by e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease and are binding even if not initialed or signed.

☐ Access Gate Addendum
☐ Additional Special Provisions
☐ Allocation Addendum for: ☐ electricity ☐ water ☐ gas
  ☐ central system costs ☐ trash/recycling ☐ cable/satellite
  ☐ stormwater/drainage ☐ services/government fees
☒ Animal Addendum
☒ Apartment Rules or Community Policies
☐ Asbestos Addendum (if asbestos is present)
☒ Bed Bug Addendum
☒ Early Termination Addendum
☒ Enclosed Garage, Carport, or Storage Unit Addendum
☐ Intrusion Alarm Addendum
☒ Inventory & Condition Form
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Addendum for Units Participating in Government Regulated Affordable Housing Programs
☐ Lease Contract Guaranty (guaranties, if more than one)
☐ Legal Description of Apartment (optional, if rental term longer than one year)
☐ Military SCRA Addendum
☒ Mold Information and Prevention Addendum
☐ Move-Out Cleaning Instructions
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity:_____)
☒ Rent Concession Addendum
☒ Renter's or Liability Insurance Addendum
☐ Repair or Service Request Form
☒ Satellite Dish or Antenna Addendum
☒ Security Guidelines Addendum
☐ PUC Tenant Guide to Water Allocation
☐ Utility Submetering Addendum: ☐ electricity ☐ water ☐ gas
☒ Other Carbon Monoxide Addendum
☒ Other TX Move Out Notice Adden.
☐ Other _____
☐ Other _____

*Name, address and telephone number of locator service (if applicable —must be completed to verify TAA membership under Par. 35):*

_____
_____
_____

After-hours phone number    (214) 492-2400
(Always call 911 for police, fire, or medical emergencies)

Date form is executed _____

**43. Class Action Waiver.** You agree that you will not participate in any class action claims against us or our representatives. You must file any claim against us individually, and *you expressly waive your ability to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.*

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. *BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY.* THE PROVISIONS OF THIS PAR. 43 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

Resident initials: _____

**You are legally bound by this document. Please read it carefully.** A facsimile or electronic signature on this Lease is as binding as an original signature.

Before submitting a rental application or signing a Lease, you may take a copy of these documents to review and/or consult an attorney. Additional provisions or changes may be made in the Lease if agreed to in writing by all parties.

You are entitled to receive a copy of this Lease after it is fully signed. Keep it in a safe place. This Lease is the entire agreement between you and us. You are NOT relying on any oral representations.

*Resident or Residents (all sign below)*

| | |
|---|---|
| Lawrence Edward Hicks | 08/25/2021 |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |

*Owner or Owner's Representative (signing on behalf of owner)*

_____

*Address and phone number of owner's representative for notice purposes*

4323 Northshore Drive
Irving, Texas 75038
(214) 492-2400

Apartment Lease Contract, TAA Official Statewide Form 19-A/B-US-2/B-3 Revised October 2019  Page 8 of 8

must be addressed to the email address we provide for notice purposes or submitted through an online portal.

**33.2 Miscellaneous.** All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to waive any insurance subrogation rights. All notices and documents may be in English and, at our option, in any other language that you read or speak. The term "including" in this Lease should be interpreted to mean "including but not limited to." Nothing in this Lease constitutes a waiver of our remedies for a breach under your prior lease that occurred before the lease term in Par. 3 begins.

**33.3 Severability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. Neither an invalid clause nor the omission of initials on any page invalidates this Lease.

**34. Payments.** Payment of each sum due is an independent covenant. When we receive money, other than sale proceeds under Par. 14 or water payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent and late fees are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 8). If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

### When Moving Out

**36. Move-Out Notice.**

**36.1 Requirements and Compliance.** Your move-out notice doesn't release you from liability for the full term of the Lease or renewal term. You'll still be liable for the entire Lease term if you move out early except under Par. 9, 17, 22, 23, or 31. *Your move-out notice must comply with each of the following:*

(a) We must receive advance written notice of your move-out date. You must give notice in advance by at least the number of days required in Par. 3 or in special provisions—even if the Lease has become a month-to-month lease. Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, it will suffice for move-out on the last day of that month, as long as all other requirements below are met.

(b) Your move-out notice must be in writing. An oral move-out notice will not be accepted and will not terminate your Lease.

(c) Your move-out notice must not terminate the Lease sooner than the end of the Lease term or renewal period.

(d) If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move-out is required

**36.2 Unacceptable Notice.** *Your notice is not acceptable if it doesn't comply with all of the above.* We recommend that you use our written move-out form to ensure that you provide all the information needed. You must get from us

a written acknowledgment of your notice. If we fail to give a reminder notice, 30 days' written notice to move out is required. If we terminate the Lease, we must give you the same advance notice—unless you are in default.

**37. Move-Out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**39. Move-Out Inspection.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, internet, television services, or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under Par. 14; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under Par. 6 and 27; government fees or fines against us for violation by you, your occupants, or your guest(s) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late payment and returned-check charges; and other sums due under this Lease. You'll be liable to us for: (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10. *We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.*

**41. Deposit Return, Surrender, and Abandonment.**

**41.1 Your Deposit.** We'll mail you your security-deposit refund (less lawful deductions) and an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise.

**41.2 Surrender.** You have *surrendered* the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; *or* (B) apartment keys and access devices listed in Par. 5 have been turned in to us—whichever happens first.

**41.3 Abandonment.** You have *abandoned* the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (C) you've been in default for nonpayment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; *and* (D) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**41.4 The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (Par. 14), but don't affect our mitigation obligations (Par. 32).

# APARTMENT LEASE – 09/22/2022 – 09/21/2023

*Accepted For Deposit* (handwritten)

This Lease is valid only if filled out before January 1, 2024.

**TEXAS APARTMENT ASSOCIATION**
**M B M B E R**

## Apartment Lease Contract

This is a binding contract. Read carefully before signing.

This Lease Contract ("Lease") is between you, the resident(s) as listed below and us. The terms "you" and "your" refer to all residents. The terms "we," "us," and "our" refer to the owner listed below.

### PARTIES

**Residents** Lawrence Edward Ricks

**Owner** Fairfield Las Brisas II LLC dba Kensley Apartment Homes

**Occupants** Above Only

### LEASE DETAILS

**A. Apartment (Par. 2)**

Street Address: 4226 Club House Circle APT 220

Apartment No. 2205    City Irving    State: TX Zip 75038

**B. Initial Lease Term.** Begins: 09/22/2022    Ends at 11:59 p.m. on: 09/21/2023

**C. Monthly Base Rent (Par. 3)**
$ 1293.00

*Accepted For Value* (handwritten)

**D. Prorated Rent**
$ 395.10
☐ due for the remainder of 1st month or
☐ for 2nd month

**E. Security Deposit (Par. 5)**
$ 100.00

Note that this amount does not include any Animal Deposit, which would be reflected in an Animal Addendum.

**F. Notice of Termination or Intent to Move Out (Par. 4)**
A minimum of _____60_____ days' written notice of termination or intent to move out required at end of initial Lease term or during renewal period

If the number of days isn't filled in, notice of at least 30 days is required.

**G. Late Fees (Par. 3.3)**

**Initial Late Fee**

☒ __10__ % of one month's monthly base rent or
☐ $ _____

Due if rent unpaid by 11:59 p.m. on the __3rd__

**Daily Late Fee**

☐ _____ % of one month's monthly base rent for _____ days or
☐ $ _____ for _____ days

(3rd or greater) day of the month

**H. Returned Check or Rejected Payment Fee (Par. 3.4)**
$ 75.00

**I. Reletting Charge (Par. 7.1)**
A reletting charge of $ _____
(not to exceed 85% of the highest monthly Rent during the Lease term) may be charged in certain default situations

**J. Optional Early Termination Fee (Par. 7.2)**
$ 2586.00
Notice of __60__ days is required.
You are not eligible for early termination if you are in default.
Fee must be paid no later than __0__ days after you give us notice
If values are blank or "0," then this section does not apply.

**K. Animal Violation Charge (Par. 12.2)**
Initial charge of $ 100.00 per animal (not to exceed $100 per animal) and

A daily charge of $ 10.00 per animal (not to exceed $10 per day per animal)

**L. Additional Rent - Monthly Recurring Fixed Charges.** You will pay separately for these items as outlined below and/or in separate addenda. Special Provisions or an amendment to this Lease.

| | | |
|---|---|---|
| Animal rent $ 0.00 | Cable/satellite $ _____ | Concierge trash $ 24.00 |
| Internet $ _____ | Package service $ _____ | Pest control $ 0.00 |
| Storage $ _____ | Stormwater/drainage $ _____ | Washer/Dryer $ _____ |
| Other: _____ | | $ _____ |
| Other: *Pay to the Bearer* | | $ _____ |
| Other: *Pay on Demand* | | $ _____ |
| Other: _____ | | $ _____ |

**M. Other Variable Charges.** You will pay separately for gas, water, wastewater, electricity, trash/recycling, utility billing fees and other items as outlined in separate addenda, Special Provisions or an amendment to this Lease.

**Utility Connection Charge or Transfer Fee:** $ 50.00 (not to exceed $50) to be paid within 5 days of written notice (Par. 3.5)

**Special Provisions.** See Par. 32 or additional addenda attached. The Lease cannot be changed unless in writing and signed by you and us.

☑ Blue Moon eSignature Services Document ID: 326127693

RESTRICTED ENDORSEMENT
By Hicks: Lawrence /Agent
For: LAWRENCEEDWARD HICKS/ Principal
(WITHOUT RECOURSE)

## LEASE TERMS AND CONDITIONS

1. **Definitions.** The following terms are commonly used in this Lease:
   1.1. **"Residents"** are those listed in "Residents" above who sign the Lease and are authorized to live in the apartment.
   1.2. **"Occupants"** are those listed in this Lease who are also authorized to live in the apartment, but who do not sign the Lease.
   1.3. **"Owner"** may be identified by an assumed name and is the owner only and not property managers or anyone else.
   1.4. **"Including"** in this Lease means "including but not limited to."
   1.5. **"Community Policies"** are the written apartment rules and policies, including property signage and instructions for care of our property and amenities, with which you, your occupants, and your guests must comply.
   1.6. **"Rent"** is monthly base rent plus additional monthly recurring fixed charges.

2. **Apartment.** You are leasing the apartment listed above for use as a private residence only.
   2.1. **Access.** In accordance with our Community Policies, you'll receive access information or devices for your apartment and mailbox, and other access devices including: Gym  FOB

   2.2. **Measurements.** Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates; actual dimensions and sizes may vary.
   2.3. **Representations.** You agree that designations or accreditations associated with the property are subject to change.

3. **Rent. *You must pay your Rent on or before the 1st day of each month (due date) without demand. There are no exceptions regarding the payment of Rent, and you agree not paying Rent on or before the 1st of each month is a material breach of this Lease.***
   3.1. **Payments.** You will pay your Rent by any method, manner and place we specify in accordance with our Community Policies. *Cash is not acceptable without our prior written permission. You cannot withhold or offset Rent unless authorized by law.* We may, at our option, require at any time that you pay Rent and other sums due in one single payment by any method we specify.
   3.2. **Application of Payments.** Payment of each sum due is an independent covenant, which means payments are due regardless of our performance. When we receive money, other than water and wastewater payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to accrued rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than Rent and late fees are due upon our demand. After the due date, we do not have to accept any payments.
   3.3. **Late Fees.** If we don't receive your monthly base rent in full when it's due, you must pay late fees as outlined in Lease Details
   3.4. **Returned Payment Fee.** You'll pay the fee listed in Lease Details for each returned check or rejected electronic payment, plus initial and daily late fees if applicable, until we receive full payment in an acceptable method.
   3.5. **Utilities and Services.** You'll pay for all utilities and services, related deposits, and any charges or fees when they are due and as outlined in this Lease. Television channels that are provided may be changed during the Lease term if the change applies to all residents.

   If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills - until the Lease term or renewal period ends. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date. If you delay getting service turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for the charge listed above (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If your apartment is individually metered and you change your retail electric provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.
   3.6. **Lease Changes.** Lease changes are only allowed during the Lease term or renewal period if governed by Par. 10, specified in Special Provisions in Par. 32, or by a written addendum or amendment signed by you and us. At or after the end of the initial Lease term, Rent increases will become effective with at least 5 days plus the number of days' advance notice contained in Box F on page 1 in writing from us to you. Your new Lease, which may include increased Rent or Lease changes, will begin on the date stated in any advance notice we provide (without needing your signature) unless you give us written move-out notice under Par. 25, which applies only to the end of the current Lease term or renewal period.

4. **Automatic Lease Renewal and Notice of Termination.** This Lease will automatically renew month-to-month unless either party gives written notice of termination or intent to move out as required by Par. 25 and specified on page 1. *If the num ber of days isn't filled in, notice of at least 30 days is required.*

5. **Security Deposit.** The total security deposit for all residents is due on or before the date this Lease is signed. Any animal deposit will be designated in an animal addendum. Security deposits may not be applied to Rent without our prior written consent.
   5.1. **Refunds and Deductions. You must give us your advance notice of move out as provided by Par. 25 and forwarding address in writing to receive a written description and itemized list of charges or refund, *in accordance with our Community Policies and as allowed by law, we may deduct from your security deposit any amounts due under the Lease. If you move out early or in response to a notice to vacate, you'll be liable for reletting charges.* Upon receipt of your move-out date and forwarding address in writing, the security deposit will be returned (less lawful deductions) with an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise. Any refund may be by one payment jointly payable to all residents and distributed to any one resident we choose, or distributed equally among all residents.**

6. **Insurance. *Our insurance doesn't cover the loss of or damage to your personal property.*** You will be required to have liability insurance as specified in our Community Policies or Lease addenda unless otherwise prohibited by law. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to require your insurance carrier to waive any insurance subrogation rights. Even if not required, we urge you to obtain your own insurance for losses due to theft, fire, flood, water, pipe leaks and similar occurrences. Most renter's insurance policies don't cover losses due to a flood.

7. **Reletting and Early Lease Termination.** This Lease may not be terminated early except as provided in this Lease.
   7.1. **Reletting Charge.** You'll be liable for a reletting charge as listed in Lease Details, (not to exceed 85% of the highest monthly Rent during the Lease term) if you: (A) fail to move in; or fail to give written move-out notice as required in Par. 25; (B) move out without paying Rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. The reletting charge is not a termination, cancellation or buyout fee and does not release you from your obligations under this Lease, including liability for future or past-due Rent, charges for damages or other sums due.

   The reletting charge is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed.
   7.2. **Early Lease Termination Procedures.** In addition to your termination rights referred to in 7.3 or 8.1 below, if this provision applies under Lease Details, you may terminate the Lease prior to the end of the Lease term *if all of the following occur:* (a) as outlined in Lease Details, you give us written notice of early termination; pay the early termination fee and specify the date by which you'll move out; (b) you are not in default at any time and do not hold over; and (c) you repay all rent concessions, credits or discounts you received during the Lease term. If you are in default, the Lease remedies apply.
   7.3. **Special Termination Rights. *You may have the right under Texas law to terminate the Lease early in certain situations involving military deployment or transfer, family violence, certain sexual offenses, stalking or death of a sole resident.***

8. **Delay of Occupancy.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to (1) abatement of Rent on a daily basis during delay, *and* (2) your right to terminate the Lease in writing as set forth below. Rent abatement and Lease termination do not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.
   8.1. **Termination.** If we give written notice to you of a delay in occupancy when or after the Lease begins, you may terminate the Lease within 3 days after you receive written notice. If we give you written notice before the date the Lease begins and the notice states that a construction or other delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease within 7 days after receiving written notice.

   After proper termination, you are entitled only to refund of any deposit(s) and any Rent you paid.



☑ Blue Moon eSignature Services Document ID: 326122693

9. **Care of Unit and Damages.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease or Community Policies violation; improper use, negligence, or other conduct by you, your invitees, your occupants, or your guests; or, as allowed by law, any other cause not due to our negligence or fault, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

*Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs and replacements occurring during the Lease term or renewal period, including: (A) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment; (B) damage to doors, windows, or screens; and (C) damage from windows or doors left open.*

### RESIDENT LIFE

10. **Community Policies.** *Community Policies become part of the Lease and must be followed.* We may make changes, including additions, to our written Community Policies, and those changes can become effective immediately if the Community Policies are distributed and applicable to all units in the apartment community and do not change the dollar amounts in Lease Details.

    **10.1.** **Photo/Video Release.** You give us permission to use any photograph, likeness, image or video taken of you while you are using property common areas or participating in any event sponsored by us.

    **10.2.** **Disclosure of Information.** At our sole option, we may, but are not obligated to, share and use information related to this Lease for law enforcement, governmental, or business purposes. At our request, you authorize any utility provider to give us information about pending or actual connections or disconnections of utility service to your apartment.

    **10.3.** **Guests.** We may exclude from the apartment community any guests or others who, in our sole judgment, have been violating the law, violating this Lease or our Community Policies, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an authorized occupant, or a guest of a specific resident in the community.

    Anyone not listed in this Lease cannot stay in the apartment for more than ___7___ days in one week without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, 2 days total per week will be the limit.

    **10.4.** **Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants: (A) are convicted of any felony, (B) are convicted of any misdemeanor involving a controlled substance, violence to another person, or destruction of property, or (C) register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

    **10.5.** **Odors and Noise.** You agree that odors, smoke and smells including those related to cooking and everyday noises or sounds are all a normal part of a multifamily living environment and that it is impractical for us to prevent them from penetrating your apartment.

11. **Conduct.** You agree to communicate and conduct yourself in a lawful, courteous and reasonable manner at all times when interacting with us, our representatives and other residents or occupants. Any acts of unlawful, discourteous or unreasonable communication or conduct by you, your occupants or guests is a breach of this Lease.

    You must use customary diligence in maintaining the apartment, keeping it in a sanitary condition and not damaging or littering the common areas. Trash must be disposed of at least weekly. You will use your apartment and all other areas, including any balconies, with reasonable care. We may regulate the use of passageways, patios, balconies, porches, and activities in common areas.

    **11.1.** **Prohibited Conduct.** You, your occupants, and your guests will not engage in unlawful, discourteous or unreasonable behavior including, but not limited to, any of the following activities:

        (a) criminal conduct; manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

        (b) behaving in a loud, obnoxious or dangerous manner;

        (c) disturbing or threatening the rights, comfort, health, safety, or convenience of others, including us, our agents, or our representatives;

        (d) disrupting our business operations;

        (e) storing anything in closets containing water heaters or gas appliances;

        (f) tampering with utilities or telecommunication equipment;

        (g) bringing hazardous materials into the apartment community;

        (h) using windows for entry or exit;

        (i) heating the apartment with gas-operated appliances;

        (j) making bad-faith or false allegations against us or our agents to others;

        (k) smoking of any kind, that is not in accordance with our Community Policies or Lease addenda;

        (l) using glass containers in or near pools; or

        (m) conducting any kind of business (including child-care services) in your apartment or in the apartment community—except for any lawful business conducted "at home" by computer, mail, or telephone if customers, clients, patients, employees or other business associates do not come to your apartment for business purposes.

12. **Animals.** *No living creatures of any kind are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.* If we allow an animal, you must sign a separate Animal Addendum and, except as set forth in the addendum, pay an animal deposit and applicable fees and additional monthly rent, as applicable. An animal deposit is considered a general security deposit. You represent that any requests, statements and representations you make, including those for an assistance or support animal, are true, accurate and made in good faith. Feeding stray, feral or wild animals is a breach of this Lease.

    **12.1.** **Removal of Unauthorized Animal.** We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 14. We may: keep or kennel the animal; turn the animal over to a humane society, local authority or rescue organization; or return the animal to you if we consent to your request to keep the animal and you have completed and signed an Animal Addendum and paid all fees. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges.

    **12.2.** **Violations of Animal Policies and Charges.** If you or any guest or occupant violates the animal restrictions of this Lease or our Community Policies, you'll be subject to charges, damages, eviction, and other remedies provided in this Lease, including animal violation charges listed in Lease Details from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for all cleaning and repair costs, including defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead in enforcing animal restrictions and Community Policies.

13. **Parking.** You may not be guaranteed parking. We may regulate the time, manner, and place of parking of all motorized vehicles and other modes of transportation, including bicycles and scooters, in our Community Policies. In addition to other rights we have to tow or boot vehicles under state law, we also have the right to remove, at the expense of the vehicle owner or operator, any vehicle that is not in compliance with our Community Policies.

14. **When We May Enter.** If you or any other resident, guest or occupant is present, then repair or service persons, contractors, law officers, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times (by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. We are under no obligation to enter only when you are present, and we may, but are not obligated to, give prior notice or make appointments.



## 15. Requests, Repairs and Malfunctions.

**15.1. Written Requests Required.** *If you or any occupant needs to send a request—for example, for repairs, installations, services, ownership disclosure, or security-related matters— it must be written and delivered to our designated representative in accordance with our Community Policies* (except for fair-housing accommodation or modification requests or situations involving imminent danger or threats to health or safety, such as fire, smoke, gas, explosion, or crime in progress). Our written notes regarding your oral request do not constitute a written request from you. Our complying with or responding to any oral request doesn't waive the strict requirement for written notices under this Lease. A request for maintenance or repair by anyone residing in your apartment constitutes a request from all residents. *The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.*

**15.2. Your Requirement to Notify.** You must promptly notify us in writing of air conditioning or heating problems, water leaks or moisture, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, or any other condition that poses a hazard or threat to property, health, or safety. Unless we instruct otherwise, you are required to keep the apartment cooled or heated according to our Community Policies. Air conditioning problems are normally not emergencies.

**15.3. Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to perform work or to avoid property damage or other emergencies. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

**15.4. Your Remedies.** We'll act with customary diligence to make repairs and reconnections within a reasonable time, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your Rent will not abate in whole or in part. "Reasonable time" accounts for the severity and nature of the problem and the reasonable availability of materials, labor, and utilities. *If we fail to timely repair a condition that materially affects the physical health or safety of an ordinary resident as required by the Texas Property Code, you may be entitled to exercise remedies under § 92.056 and § 92.0561 of the Texas Property Code. If you follow the procedures under those sections, the following remedies, among others, may be available to you: (1) termination of the Lease and an appropriate refund under 92.056(f); (2) have the condition repaired or remedied according to § 92.0561; (3) deduct from the Rent the cost of the repair or remedy according to § 92.0561; and 4) judicial remedies according to § 92.0563.*

## 16. Our Right to Terminate for Apartment Community Damage or Closure.
If, in our sole judgment, damages to the unit or building are significant or performance of needed repairs poses a danger to you, we may terminate this Lease and your right to possession by giving you at least 7 days' written notice. If termination occurs, you agree we'll refund only prorated rent and all deposits, minus lawful deductions. We may remove your personal property if, in our sole judgment, it causes a health or safety hazard or impedes our ability to make repairs.

**16.1. Property Closure.** We also have the right to terminate this Lease and your right to possession by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes for at least 6 months, or if any part of the property becomes subject to an eminent domain proceeding.

## 17. Assignments and Subletting. You may not assign this Lease or sub-let your apartment. You agree that you won't rent, offer to rent or license all or any part of your apartment to anyone else unless otherwise agreed to in advance by us in writing. You agree that you won t accept anything of value from anyone else for the use of any part of your apartment. You agree not to list any part of your apartment on any lodging or short term rental website or with any person or ser vice that advertises dwellings for rent.

## 18. Security and Safety Devices. <u>We'll pay for missing security devices that are required by law. You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.</u> You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

*Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peep-hole or window) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to in-stall or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next Rent pay-ment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the require-ments of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**18.1. Smoke Alarms and Detection Devices.** We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing impairment.

You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. Neither you nor your guests or occupants may disable alarms or detectors. *If you damage or disable the smoke alarm or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's Rent, actual damages, and attorney's fees.*

**18.2. Duty to Report.** You must immediately report to us any missing, malfunctioning or defective security devices, smoke alarms or detectors. You'll be liable if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

## 19. Resident Safety and Loss. *Unless otherwise required by law, none of us, our employees, agents, or management companies are liable to you, your guests or occupants for any damage, personal injury, loss to personal property, or loss of business or personal income, from any cause, including but not limited to: negligent or intention-al acts of residents, occupants, or guests; theft, burglary, assault, vandalism or other crimes; fire, flood, water leaks, rain, hail, ice, snow, smoke, lightning, wind, explosions, interruption of utilities, pipe leaks or other occurrences unless such damage, injury or loss is caused exclusively by our negligence.*

*We do not warrant security of any kind.* You agree that you will not rely upon any security measures taken by us for personal security, and that you will call 911 and local law enforcement authorities if any security needs arise.

You acknowledge that we are not equipped or trained to provide personal security services to you, your guests or occupants. You rec-ognize that we are not required to provide any private security ser vices and that no security devices or measures on the property are fail-safe. You further acknowledge that, even if an alarm or gate ame-nities are provided, they are mechanical devices that can malfunc-tion. Any charges resulting from the use of an intrusion alarm will be charged to you, including, but not limited to, any false alarms with police/fire/ambulance response or other required city charges.

## 20. Condition of the Premises and Alterations.

**20.1. As-Is.** *We disclaim all implied warranties.* You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You'll be given an Inventory and Condition Form at or before move-in. You agree that after completion of the form or within 48 hours after move-in, whichever comes first, you must note on the form all defects or damage, sign the form, return it to us, and the form accurately reflects the condition of the premises for purposes of determining any refund due to you when you move out. Otherwise, everything will be considered to be in a clean, safe, and good working condition. You must still send a separate request for any repairs needed as provided by Par. 15.1.

**20.2. Standards and Improvements.** Unless authorized by law or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless our Community Policies state otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls. No water furniture, washing machines, dryers, extra phone or television outlets, alarm systems,

✓ Blue Moon eSignature Services Document ID: 326127693

cameras, video or other doorbells, or lock changes, additions, or rekeying is permitted unless required by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite-dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, appliances, furniture, telephone and television wiring, screens, locks, or security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

21. **Notices.** Written notice to or from our employees, agents, or management companies constitutes notice to or from us. Notices to you or any other resident of the apartment constitute notice to all residents. Notices and requests from any resident constitute notice from all residents. Only residents can give notice of Lease termination and intent to move out under Par. 23. All notices and documents will be in English and, at our option, in any other language that you read or speak.

21.1. **Electronic Notice.** Notice may be given electronically *by us to you* if allowed by law. If allowed by law and in accordance with our Community Policies, electronic notice *from you to us* must be sent to the email address and/or portal specified in Community Policies. Notice may also be given by phone call or to a physical address if allowed in our Community Policies.

You represent that you have provided your current email address to us, and that you will notify us in the event your email address changes.

## EVICTION AND REMEDIES

22. **Liability.** Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or our Community Policies, all residents are considered to have violated the Lease.

22.1. **Indemnification by You.** You'll defend, indemnify and hold us and our employees, agents, and management company harmless from all liability arising from your conduct or requests to our representatives and from the conduct of or requests by your invitees, occupants or guests.

23. **Default by Resident.**

23.1. **Acts of Default.** You'll be in default if: (A) you don't timely pay Rent, including monthly recurring charges, or other amounts you owe; (B) you or any guest or occupant violates this Lease, our Community Policies, or fire, safety, health, criminal or other laws, regardless of whether or where arrest or conviction occurs; (C) you give incorrect, incomplete, or false answers in a rental application or in this Lease; or (D) you or any occupant is charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex related crime, including a misdemeanor.

23.2. **Eviction.** *If you default, including holding over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.* Termination of your possession rights doesn't release you from liability for future Rent or other Lease obligations. *After giving notice to vacate or filing an eviction suit, we may still accept Rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction or any other contractual or statutory right.* Accepting money at any time doesn't waive our right to damages, to past or future Rent or other sums, or to our continuing with eviction proceedings. In an eviction, Rent is owed for the full rental period and will not be prorated.

23.3. **Acceleration.** Unless we elect not to accelerate Rent, all monthly Rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due if, without our written consent: (A) you move out, remove property in preparing to move out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all Rent for the entire Lease term or renewal period. Remaining Rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted.

If you don't pay the first month's Rent when or before the Lease begins, all future Rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future Rent, attorney's fees, court costs, and other lawful charges.

23.4. **Holdover.** You or any occupant or guest must not hold over beyond the date contained in: (1) your move-out notice, (2) our notice to vacate, (3) our notice of non-renewal, or (4) a written agreement specifying a different move-out date. If a holdover occurs, then you'll be liable to us for all Rent for the full term of the previously signed lease of a new resident who can't occupy because of the holdover, and at our option, we may extend the Lease term and/or increase the Rent by 25% by delivering written notice to you or your apartment while you continue to hold over.

23.5. **Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means. If you default, you will pay us, in addition to other sums due, any rental discounts or concessions agreed to in writing that have been applied to your account. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe bear interest at the rate provided by Texas Finance Code Section 304.003(c) from the due date. You must pay all collection-agency fees if you fail to pay sums due within 10 days after you are mailed a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline. You are also liable for a charge (not to exceed $150) to cover our time, cost and expense for any eviction proceeding against you, plus our attorney's fees and expenses, court costs, and filing fees actually paid.

24. **Representatives' Authority and Waivers.** *Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing and signed, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing and signed.* No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. *Our choice to enforce, not enforce or delay enforcement of written-notice requirements, rental due dates, acceleration, liens, or any other rights isn't a waiver under any circumstances.* Delay in demanding sums you owe is not a waiver. Except when notice or demand is required by law, you waive any notice and demand for performance from us if you default. Nothing in this Lease constitutes a waiver of our remedies for a breach under your prior lease that occurred before the Lease term begins.

All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or nonduty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.

## END OF THE LEASE TERM

25. **Move-Out Notice.** *Before moving out, you must give our representative advance written move-out notice as stated in Par. 4, even if the Lease has become a month-to-month lease.* The move-out date can't be changed unless we and you both agree in writing.

*Your move-out notice must comply with each of the following:*

(a)    Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, move out will be on the last day of that month.

(b)    Your move-out notice must not terminate the Lease before the end of the Lease term or renewal period.

(c)    If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move out is required.

(d)    You must get from us a written acknowledgment of your notice.

26. **Move-Out Procedures.**

26.1. **Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without your negligence, carelessness, accident, or abuse)

**26.2.  Move-Out Inspection.** We may, but are not obligated to, provide a joint move-out inspection. Our representatives have no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**27. Surrender and Abandonment.** You have **surrendered** the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; **or** (B) apartment keys and access devices listed in Par. 2.1 have been turned in to us—whichever happens first.

You have **abandoned** the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) you've been in default for nonpayment of Rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred, **and** (C) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**27.1.  The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove or store property left in the apartment.

**27.2.  Removal and Storage of Property.** We, or law officers, may—but have no duty to—remove or store all property that in our sole judgment belongs to you and remains in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) after you're judicially evicted or if you surrender or abandon the apartment.

**We're not liable for casualty, loss, damage, or theft.** You must pay reasonable charges for our packing, removing and storing any property.

Except for animals, we may throw away or give to a charitable organization all personal property that is:

(1) left in the apartment after surrender or abandonment; **or**

(2) left outside more than 1 hour after writ of possession is executed, following judicial eviction.

An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

**GENERAL PROVISIONS AND SIGNATURES**

**28. TAA Membership.** We, the management company representing us, or any locator service that you used confirms membership in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located at the time of signing this Lease. If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

Name, address and telephone number of locator service (if applicable):

_____

_____

_____

_____

**29. Severability and Survivability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. **Paragraphs 10.1, 10.2, 16, 27 and 31 shall survive the termination of this Lease.** This Lease binds subsequent owners.

**30. Controlling Law.** Texas law governs this Lease. All litigation arising under this Lease and all Lease obligations must be brought in the county, and precinct if applicable, where the apartment is located.

**31. Waivers.** By signing this Lease, you agree to the following:

**31.1.  Class Action Waiver.** You agree that you will not participate in any class action claims against us or our employees, agents, or management company. You must file any claim against us individually, and **you expressly waive your right to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.**

**YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.**

**31.2.  Force Majeure.** If we are prevented from completing substantial performance of any obligation under this Lease by occurrences that are beyond our control, including but not limited to, an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage or governmental regulation, then we shall be excused from any further performance of obligations to the fullest extent allowed by law.

**32. Special Provisions.** The following, or attached Special Provisions and any addenda or Community Policies provided to you, are part of this Lease and supersede any conflicting provisions in this Lease.

Resident Tip Sheet attached & binding.
No checks accepted after the 3rd day of
the month or 2nd NSF. Resident(s)
understand and agree that Kensley does
not offer month to month leases for
voucher holders, therefore, a renewal
lease will need to be executed or
required notice to vacate must be
provided as specified on section F of
the Lease Details of the lease
agreement. EARLY LEASE TERMINATION - Low
Income Housing Tax Credit (LIHTC)
residents must complete 6 months of
residency to qualify for the Early
Termination option. The early
termination fee must be paid at the time
notice to vacate is received.

_____

_____

**Before submitting a rental application or signing this Lease, you should review the documents and may consult an attorney. You are bound by this Lease when it is signed. An electronic signature is binding. This Lease is the entire agreement between you and us. You are NOT relying on any oral representations.**

*Resident or Residents* (all sign below)

| | |
|---|---|
| *Lawrence Edward Hicks* | 07/12/2022 |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |
| | |
| (Name of Resident) | Date signed |

*Owner or Owner's Representative* (signing on behalf of owner)

*Guy Adel*

32

## *DURABLE POWER OF ATTORNEY*

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND
SWEEPING. THEY ARE EXPLAINED IN THE DURABLE POWER OF ATTORNEY ACT,
SUBTITLE P, TITLE 2, ESTATES CODE. IF YOU HAVE ANY QUESTIONS ABOUT
THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES
NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE
DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU
LATER WISH TO DO SO. IF YOU WANT YOUR AGENT TO HAVE THE AUTHORITY
TO SIGN HOME EQUITY LOAN DOCUMENTS ON YOUR BEHALF, THIS POWER OF
ATTORNEY MUST BE SIGNED BY YOU AT THE OFFICE OF THE LENDER, AN
ATTORNEY AT LAW, OR A TITLE COMPANY.

You should select someone you trust to serve as your agent. Unless you specify otherwise,
generally the agent's authority will continue until:

(1) you die or revoke the power of attorney; or

(2) your agent resigns or is unable to act for you; or

(3) a guardian is appointed for your estate.

I, LAWRENCE HICKS, residing at 3525 W Walnut Hill Lane Apt 2029, Irving, Texas 75038,
hereby appoint Hicks, Lawrence-Edward of 3525 W Walnut Hill Lane Apt 2029, Irving, Texas
75038, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below.

- Real property transactions
- Tangible personal property transactions
- Stock and bond transactions
- Commodity and option transactions
- Banking and other financial institution transactions
- Business operating transactions
- Insurance and annuity transactions
- Estate, trust, and other beneficiary transactions
- Claims and litigation
- Personal and family maintenance
- Benefits from social security, Medicare, Medicaid, or other governmental programs or
civil or military service
- Retirement plan transactions
- Tax matters
- Digital assets and the content of an electronic communication

I hereby revoke all general powers of attorney and special powers of attorney that have
previously been signed by me.

SPECIAL INSTRUCTIONS APPLICABLE TO AGENT COMPENSATION: My agent is entitled to reimbursement of reasonable expenses incurred on my behalf and to compensation that is reasonable under the circumstances.

### GRANT OF SPECIFIC AUTHORITY:

(CAUTION: Granting any of the following will give your agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death. Consultation with an attorney is recommended before granting any of these specific powers).

In addition to the above powers, my agent will have the authority to:

-       Make a gift, subject to the limitations of Section 751.032 of the Durable Power of Attorney Act (Section 751.302, Estates Code) and any special instructions in this power of attorney
-       Create or change a beneficiary designation

### THIS POWER OF ATTORNEY IS NOT AFFECTED BY MY SUBSEQUENT DISABILITY OR INCAPACITY.

I shall be considered disabled or incapacitated for purposes of this power of attorney if a physician certifies in writing at a date later than the date this power of attorney is executed that, based on the physician's medical examination of me, I am mentally incapable of managing my financial affairs. I authorize the physician who examines me for this purpose to disclose my physical or mental condition to another person for purposes of this power of attorney. A third party who accepts this power of attorney is fully protected from any action taken under this power of attorney that is based on the determination made by a physician of my disability or incapacity.

This power of attorney continues until I revoke it, or it is terminated by my death or other event described in Subtitle P, Title 2 of the Texas Estates Code.

I agree that any third party who receives a copy of this document may act under it. Termination of this durable power of attorney is not effective as to a third party until the third party has actual knowledge of the termination. I agree to indemnify the third party for any claims that arise against the third party because of their reliance on this power of attorney. The meaning and effect of this durable power of attorney is determined by Texas law.

Dated: December 01, 2023, at Irving, Texas.

34

LAWRENCE HICKS
LAWRENCE HICKS

This document was acknowledged before me on <u>December 1, 2023,</u> by <u>LAWRENCE HICKS</u>
(name of principal).

STATE OF TEXAS.
COUNTY OF DALLAS. ss:

_(signature of notarial officer)_

NEIL SYKES
Notary Public, State of Texas
Comm. Expires 02-18-2025
Notary ID 7052618

Neil Sykes
(printed name)

My commission expires    2/18/2025

35

## IMPORTANT INFORMATION FOR AGENT

### Agent's Duties

When you accept the authority granted under this power of attorney, you establish a "fiduciary" relationship with the principal. This is a special legal relationship that imposes on you legal duties that continue until you resign or the power of attorney is terminated, suspended or revoked by the principal or by operation of law. A fiduciary duty generally includes the duty to:

(1)     act in good faith;

(2)     do nothing beyond the authority granted in this power of attorney;

(3)     act loyally for the principal's benefit;

(4)     avoid conflicts that would impair your ability to act in the principal's best interest; and

(5)     disclose your identity as an agent when you act for the principal by writing or printing the name of the principal and signing your own name as "agent" in the following manner:

     (Principal's Name) by (Your Signature) as Agent

In addition, the Durable Power of Attorney Act (Subtitle P, Title 2, Estates Code) requires you to:

(1)     maintain records of each action taken or decision made on behalf of the principal;

(2)     maintain all records until delivered to the principal, released by the principal, or discharged by a court; and

(3)     if requested by the principal, provide an accounting to the principal that, unless otherwise directed by the principal or otherwise provided in the Special Instructions, must include:

(A)     the property belonging to the principal that has come to your knowledge or into your possession;

(B)     each action taken, or decision made by you as agent;

(C)     a complete account of receipts, disbursements, and other actions of you as agent that includes the source and nature of each receipt, disbursement, or action, with receipts of principal and income shown separately;

(D)     a listing of all property over which you have exercised control that includes an adequate description of each asset and the asset's current value, if known to you;

(E)     the cash balance on hand and the name and location of the depository at which the cash balance is kept;

36

(F)     each known liability:

(G)     any other information and facts known to you as necessary for a full and definite understanding of the exact condition of the property belonging to the principal; and

(H)     all documentation regarding the principal's property.

**Termination of Agent's Authority**

You must stop acting on behalf of the principal if you learn of any event that terminates or suspends this power of attorney or your authority under this power of attorney. An event that terminates this power of attorney or your authority to act under this power of attorney includes:

(1)     the principal's death:

(2)     the principal's revocation of this power of attorney or your authority:

(3)     the occurrence of a termination event stated in this power of attorney:

(4)     if you are married to the principal, the dissolution of your marriage by a court decree of divorce or annulment or declaration that your marriage is void, unless otherwise provided in this power of attorney:

(5)     the appointment and qualification of a permanent guardian of the principal's estate unless a court orders otherwise; or

(6)     if ordered by a court, your removal as agent (attorney in fact) under this power of attorney. An event that suspends this power of attorney or your authority to act under this power of attorney is the appointment and qualification of a temporary guardian unless a court order provides otherwise.

**Liability of Agent**

The authority granted to you under this power of attorney is specified in the Durable Power of Attorney Act (Subtitle P, Title 2, Estates Code). If you violate the Durable Power of Attorney Act or act beyond the authority granted, you may be liable for damages caused by the violation or subject to prosecution for misapplication of property by a fiduciary under Chapter 32 of the Texas Penal Code.

THE AGENT, BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

# EXHIBIT B, NOTICE OF CLAIM TO INTEREST

38

# NOTICE OF CLAIM TO INTEREST 1st ATTEMPT

Certified Mail #: 7022 0410 0003 2783 8694

Notice Date: December 1, 2023
Claimant: Hicks, Lawrence-E

PO Box 154986

Irving, Texas 75015

Respondent: Shant Koumriqian CFO

Fairfield Residential LLC

5355 Mira Sorrento Place Ste 100

San Diego, CA 92121

I, Hicks, Lawrence-E/, agent on behalf of LAWRENCE HICKS/Principal; Hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal. I have a security interest in the lease agreement, and I have not been compensated for that. Where is the disclosure, within the attached lease agreement that gives me notice for my interest. I hereby instruct Fairfield Residential LLC CFO, Shant Koumriqian, to apply Principal's Balance to Principal's Account #923340395-001 for Set-Off.

Please apply this Tender of payment to the account within five business days after receipt of this notice. I also instruct CFO Shant Koumriqian, to communicate through writing, if there are any discrepancies, within five business days. After receipt of this notice, I can assume that the aforesaid instructions have been completed.

I declare under penalties of perjury under the laws of the state of Texas, that the above is true, correct, and complete; and that this Affidavit of Service was executed on December 1, 2023; in Irving, Texas 75038.

Lawrence E Hicks

Lawrence E Hicks: Agent

Name of Notary Public

Notary Public in and for said State of Texas

My Commission Expires _____

HERI SYKES
Notary Public State of Texas
Comm. Expires 03-18-2025
Notary ID 7052618

39

40

# USPS Tracking®

**Track Packages**
**Anytime, Anywhere**

Get the free Informed Delivery® feature to rece
automated notifications on your packages

app=UspsTools&ref.sho nepageBanner&appURL=https%3A%

**Tracking Number:**

Remove ✕

## 70220410000327838694

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item has been delivered to an agent for final delivery in
SAN DIEGO, CA 92121 on December 6, 2023 at 3:45 pm.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

**Text & Email Updates**

**Delivered to Agent**
**Delivered to Agent for Final Delivery**

SAN DIEGO, CA 92121
December 6, 2023, 3:45 pm

See All Tracking History

(https://faq.usps.com/s/article/Where-is-my-
package)

>



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

Shant Koumriqian, CFO
5355 Mira Sorrento Place Ste 100
San Diego, California 92121

7022 0410 0003 2783 8694

EXHIBIT C, Tender of Payment, Opportunity to Cure

41

# NOTICE OF CLAIM TO INTEREST

## OPPORTUNITY TO CURE 2nd ATTEMPT

Certified Mail #: 9589 0710 5270 0870 2811 00

Notice Date: December 15, 2023
Claimant: Hicks, Lawrence-E

PO Box 154986

Irving, Texas 75015

Respondent: Shant Koumriqian CFO

Fairfield Residential LLC

5355 Mira Sorrento Place Ste 100

San Diego, CA 92121

I, Hicks, Lawrence-E/, agent on behalf of LAWRENCE HICKS/Principal. I hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal LAWRENCE HICKS. I hereby instruct Fairfield Residential CFO Shant Kumriqian, to apply Principal's Balance to Principal's Account #923340395-001 for Set-Off. Please apply this Tender of payment to the account within five business days after receipt of this notice. I also instruct Fairfield Residential CFO Shant Kumriqian to communicate through writing if there are any discrepancies within five business days. If no communication is made within five business days after receipt of this notice, then I can assume that the aforesaid instructions have been completed.

I declare under penalties of perjury under the laws of the state of Texas, that the above is true, correct, and complete; and that this Affidavit of Service was executed on December 07, 2023, in Irving, Texas.

Lawrence E. Hicks

Lawrence E Hicks: Agent

Sherry Murphy

Name of Notary Public

Notary Public in and for said State of Texas

My Commission Expires Aug 25, 2025



SHERRY DENISE MU
My Notary ID # 13
Expires August 2



SHERRY DENISE MURPHY
My Notary ID # 131260231
Expires August 25, 2025

42



Remove X

**Tracking Number:**

9589071052700870281100

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered to an agent for final delivery in SAN DIEGO, CA 92121 on December 19, 2023 at 3:30 pm.

Get More Out of USPS Tracking:

USPS Tracking Plus®

## Delivered to Agent
Delivered to Agent for Final Delivery

SAN DIEGO, CA 92121
December 19, 2023, 3:30 pm

See All Tracking History

What Do USPS Tracking Statuses Mean?
(https://faq.usps.com/s/article/Where-is-my-package)

>

Text & Email Updates

# EXHIBIT D, Refusal to Perform, Records of Non-Response

44

## NOTICE OF CLAIM TO INTEREST

## DEFAULT JUDGEMENT FOR NON-PERFORMANCE

Certified Mail #: 9589 0710 5270 0870 2811 31

Notice Date: January 03, 2023
Claimant: Hicks, Lawrence-E

PO Box 154986

Irving, Texas 75015

Respondent: Shant Koumriqian CFO

Fairfield Residential LLC

5355 Mira Sorrento Place Ste 100

San Diego, CA 92121

I, Hicks, Lawrence-E/, agent on behalf of LAWRENCE HICKS/Principal. I hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal LAWRENCE HICKS. I hereby instruct Fairfield Residential CFO Shant Kumriqian to apply Principal's Balance to Principal's Account #923340395-001 for Set-Off. Please apply this Tender of payment to the account within five business days after receipt of this notice. I also instruct Fairfield Residential CFO Shant Kumriqian to communicate through writing if there are any discrepancies within five business days. If no communication is made within five business days after receipt of this notice, then I can assume that the aforesaid instructions have been completed.

I declare under penalties of perjury under the laws of the state of Texas, that the above is true, correct, and complete; and that this Affidavit of Service was executed on January 03, 2024 in Irving, Texas.

Lawrence E. Hicks

**Lawrence E Hicks: Agent**

Name of Notary Public

Notary Public in and for said State of Texas

My Commission Expires ___2/18/23___

45

# EXHIBIT E, PAST PAYMENTS

47

## h Yield Checking (ID# 0001)

| | | PREVIOUS BALANCE | | $3,374.51 |
|---|---|---|---|---|
| 1 | | | | |
| 2 | **Description** | **Deposits** | **Withdrawals** | **Balance** |
| 0 | ATM Withdrawal MOBILITY CU (11/30/2020) 8384 N BELT LINE RD IRVING TX TX000249 | | 60.00 | $3,314.51 |
| 1 | POS Card purchase CHEVRON/ICE BOX 498 DALLAS TX 10041801 | | 15.00 | $3,299.51 |
| 1 | POS Card purchase AUTOZONE 1561 4714 BROADWAY GARLAND TX 61010000 | | 33.53 | $3,265.98 |
| 2 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 12.68 | | $3,278.66 |
| 1 | Debit Card purchase YSI*RESERVE AT LAS (12/01/2020) 214-4922400 TX 12587278 | | 922.50 | $2,356.16 |
| 1 | Debit Card purchase QBE INSURANCE (12/01/2020) 888-5602745 NY 77936120 | | 15.54 | $2,340.62 |
| 1 | Debit Card purchase USPS PO BOXES ONLIN (12/01/2020) 800-782-6724 DC 97746255 | | 59.00 | $2,281.62 |
| 2 | ACH Deposit Imperial Insuran PAYMENTS Copeland L Hicks | 60.24 | | $2,341.86 |

4-2000  800-388-7889  www.mobilitycu.com



# MOBILITY
## C R E D I T   U N I O N
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
01/01/2021 - 01/31/2021

**Account #**
********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 01/01 | Debit Card purchase YSI*RESERVE AT LAS (01/01/2021) 214-4922400 TX 24077460 | | 922.50 | $2,569.81 |
| 01/01 | Debit Card purchase QBE INSURANCE (01/01/2021) 888-5602745 NY 24584821 | | 15.54 | $2,554.27 |
| 01/03 | POS Card purchase KROGER #0 532 W INT GARLAND TX 10040304 | | 10.81 | $2,543.46 |
| 01/03 | POS Card purchase QT 909 INSIDE (01/03/2021) 5825 BROADWAY BLVD GARLAND TX 001 | | 22.00 | $2,521.46 |
| 01/03 | POS Card purchase KROGER #0 532 W INT (01/03/2021) GARLAND TX 10040303 | | 12.98 | $2,508.48 |

# MOBILITY
## C R E D I T   U N I O N
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
02/01/2021 - 02/28/2021

**Account #**
********91

| an ate | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 2/02 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,053.76 | $1,565.17 |
| 2/02 | Home banking Deposit Transfer from Share 0000 | 600.00 | | $2,165.17 |
| 2/01 | Debit Card purchase KFC J625051 (02/01/2021) IRVING TX 54000134 | | 3.78 | $2,161.39 |
| 2/02 | POS Card purchase TOTAL WINE AND M IRVING TX 59067204 | | 49.78 | $2,111.61 |

48



## MOBILITY
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
03/01/2021 - 03/31/2021

**Account #**
********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|-----------|-------------|----------|-------------|---------|
| 03/01 | POS Card purchase WINCO FOODS #131 1122 W Centerville Garland TX 31008200 | | 19.14 | $3,791.45 |
| 03/01 | POS Card purchase CIRCLE K #274205 3950 VALLEYVIEW LN IRVING TX 64624802 | | 27.00 | $3,764.45 |
| 03/02 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 11.51 | | $3,775.96 |
| 03/01 | Debit Card purchase PAYPAL *EXPRESSVPN (03/01/2021) 4029357733 DE 10111894 | | 99.95 | $3,676.01 |
| 03/01 | Debit Card purchase QBE INSURANCE (03/01/2021) 888-5602745 NY 16730926 | | 15.54 | $3,660.47 |
| 03/02 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,053.17 | $2,607.30 |



## MOBILITY
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
04/01/2021 - 04/30/2021

**Account #**
********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|-----------|-------------|----------|-------------|---------|
| 04/01 | POS Card purchase CTS FRONTIER ONLINE ROCHESTER NY 001 | | 54.81 | $4,583.13 |
| 04/01 | POS Card purchase WAL-MART #2649 1635 MARKET PLACE B IRVING TX 24264901 | | 16.21 | $4,566.92 |
| 04/02 | ACH Deposit UNITED INSURANCE DIRECT DEP 4100875843 PP HICKS LAWRENCE E | 325.30 | | $4,892.22 |
| 04/02 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 11.51 | | $4,903.73 |
| 04/01 | Debit Card purchase QBE INSURANCE (04/01/2021) 888-5602745 NY 10314167 | | 15.54 | $4,888.19 |
| 04/02 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,056.52 | $3,831.67 |

49



**MOBILITY**
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | Account # |
|---|---|
| 05/01/2021  05/31/2021 | ········91 |

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 5/02 | POS Card purchase CVS/PHARM 05260 34 IRVING TX 30526006 | | 36.00 | $2,922.91 |
| 5/02 | POS Card purchase THE HOME DEPOT # 3200 W IRVING BLV IRVING TX 06115065 | | 8.10 | $2,914.81 |
| 5/01 | Debit Card purchase QBE INSURANCE (05/01/2021) 888 5602745 NY 22183875 | | 15.54 | $2,899.27 |
| 5/03 | ACH Withdrawal SHOP YOUR WAY MC AUTO PYMT LAWRENCE E HICKS | | 50.00 | $2,849.27 |
| 5/03 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805 699 2040 LawrenceHicks | | 1,056.15 | $1,793.12 |



**MOBILITY**
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | Account # |
|---|---|
| 06/01/2021  06/30/2021 | ········91 |

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 06/01 | POS Card purchase Adjustment ROSS STORE #403 IRVING TX 06911908 | 7.98 | | $1,389.59 |
| 06/01 | POS Card purchase ALDI 75058 IRVING TX 89842502 | | 12.52 | $1,377.07 |
| 06/02 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 6.98 | | $1,384.05 |
| 06/02 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805 699 2040 LawrenceHicks | | 1,059.64 | $324.41 |

50



**MOBILITY**
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | Account # |
|---|---|
| 07/01/2021 - 07/31/2021 | ········91 |

| ran ate | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 7/03 | POS Card purchase QT 994 INSIDE (07/03/2021) 4301 N BELTLINE RD IRVING TX 001 | | 30.00 | $1,510.39 |
| 7/03 | POS Card purchase KROGER #0 3612 N BE (07/03/2021) IRVING TX 10040250 | | 33.37 | $1,477.02 |
| 7/04 | Debit Card purchase LEPEEPS GRILL IRVING TX 19000702 | | 33.29 | $1,443.73 |
| 7/02 | Debit Card purchase CHICK-FIL-A # 0101 (07/02/2021) IRVING TX 09696059 | | 8.11 | $1,435.62 |
| 7/05 | POS Card purchase KROGER #0 2201 W GR IRVING TX 10042903 | | 4.86 | $1,430.76 |
| 7/06 | ACH Withdrawal CAPITAL ONE CRCARDPMT LAWRENCE E HICKS | | 35.00 | $1,395.76 |
| 7/06 | ACH Withdrawal SHOP YOUR WAY MC AUTO PYMT LAWRENCE E HICKS | | 35.00 | $1,360.76 |
| 7/06 | ACH Withdrawal SYNCHRONY BANK PAYMENT HICKS.LAWRENCE | | 50.00 | $1,310.76 |
| 7/06 | ACH Withdrawal FPB CR CARD TELEPHONE TELEPHONE LAWRENCE HICKS | | 35.00 | $1,275.76 |
| 7/07 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805-699-2040 LawrenceHicks | | 800.00 | $475.76 |

5 |



## MOBILITY
C R E D I T   U N I O N
*Banking Without Boundaries*

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | Account # |
|---|---|
| 07/01/2021 - 07/31/2021 | ********91 |

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 07/16 | Bill Payment Card purchase TXU BILL PAYMENT 6555 SIERRA IRVING TX 001 | | 127.64 | $613.89 |
| 07/16 | POS Card purchase GOODY GOODY LIQU 3500 LAKEVIEW PKWY ROWLETT TX 004 | | 25.97 | $587.92 |
| 07/16 | Debit Card purchase ROOT INSURANCE (07/16/2021) 6149150703 OH 00636744 | | 140.07 | $447.85 |
| 07/16 | Debit Card purchase CHILI'S I30 BROADWA (07/16/2021) GARLAND TX 88800098 | | 14.28 | $433.57 |
| 07/18 | Debit Card purchase CASH APP*AESHA MYCH (07/18/2021) 4153753176 CA 77219489 | | 30.00 | $403.57 |
| 07/19 | ACH Deposit Imperial Insuran PAYMENTS Commissions 07/21 Copeland-L Hicks | 67.50 | | $471.07 |
| 07/18 | Debit Card purchase RAISING CANE'S #71 (07/18/2021) IRVING TX 37317298 | | 9.00 | $462.07 |
| 07/20 | ACH Deposit UHIC SEC HOZ UHIC LAWRENCE HICKS | 34.00 | | $496.07 |
| 07/19 | POS Card purchase QT 994 INSIDE (07/19/2021) 4301 N BELTLINE RD IRVING TX 001 | | 25.00 | $471.07 |
| 07/19 | Debit Card purchase SSS IRVING (07/19/2021) IRVING TX 32772632 | | 195.00 | $276.07 |
| 07/20 | POS Card purchase PATEL BROTHERS 10009 W ROCHELLE RD IRVING TX 03937267 | | 7.56 | $268.51 |
| 07/20 | Debit Card purchase PAYPAL *EBAY US 4029357733 CA 17199649 | | 14.95 | $253.56 |
| 07/21 | ACH Deposit SSA TREAS 310 XXSOC SEC LAWRENCE E HICKS | 1,414.00 | | $1,667.56 |
| 07/20 | POS Card purchase ALDI 75058 (07/20/2021) IRVING TX 89842502 | | 5.30 | $1,662.26 |
| 07/21 | Bill Payment Card purchase BillMatrix Irving TX FCC1139 | | 54.81 | $1,607.45 |
| 07/20 | Debit Card purchase RINGCENTRAL, INC (07/20/2021) BELMONT CA 05928585 | | 22.36 | $1,585.09 |
| 07/20 | Debit Card purchase WHATABURGER C200 (07/20/2021) EULESS TX 25704491 | | 6.11 | $1,578.98 |
| 07/21 | POS Card purchase KROGER #0 2201 W GR IRVING TX 10042902 | | 10.99 | $1,567.99 |
| 07/22 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805-699-2840 LawrenceHicks | | 352.26 | $1,215.73 |

52



Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | | Account # |
|---|---|---|
| 05/01/2022  05/31/2022 | | ********91 |

| an ate | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| ∨01 | POS Card purchase O'REILLY AUTO PA 000000129067 1030 EAST PLEASANT DESOTO TX 02391802 | | 11.90 | $18,821.83 |
| ∨01 | POS Card purchase O'REILLY AUTO PA 685200 1030 EAST PLEASANT DESOTO TX 02391802 | | 17.31 | $18,804.52 |
| ∨01 | Debit Card purchase QBE INSURANCE 265370 (05/01/2022) 888-5602745 NY 24807192 | | 16.75 | $18,787.77 |
| ∨02 | ACH Deposit Imperial Insuran CASH C&D Commission TX Copeland L Hicks | 71.76 | | $18,859.53 |
| ∨02 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 530.17 | $18,329.36 |



Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | | Account # |
|---|---|---|
| 06/01/2022  06/30/2022 | | ********91 |

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 06/01 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 44.73 | $20,460.48 |
| 06/01 | Debit NTTA AUTOCHARGE 481944 (06/01/2022) 972-818-6882 TX 62804969 | | 20.00 | $20,440.48 |
| 06/02 | ACH Deposit Ameritas Life In XP04ACH  HICKS LAWRENCE | 7.27 | | $20,447.75 |
| 06/02 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,086.00 | $19,361.75 |

53

The header is an image with logo.



**MOBILITY**
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
07/01/2022 - 07/31/2022

**Account #**
*********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 07/02 | POS Adjustment KROGER #0 3612 N BE 946730 IRVING TX 10040231 | 18.39 | | $17,005.82 |
| 07/02 | POS WINCO FOO 1122 W Ce 105184 Garland TX 31009200 | | 6.02 | $16,999.80 |
| 07/02 | POS QT 909 INSIDE 218322215865 (07/02/2022) 5825 BROADWAY BLVD GARLAND TX 001 | | 40.00 | $16,959.80 |
| 07/02 | POS WM SUPERCENTER # 404260 (07/02/2022) Wal-Mart Super Cent GARLAND TX 32240003 | | 13.12 | $16,946.68 |
| 07/02 | Debit QBE INSURANCE 309575 (07/02/2022) 888 5602745 NY 31595402 | | 16.75 | $16,929.93 |
| 07/02 | Debit 753 HOULIHAN GARLAN 241912 (07/02/2022) GARLAND TX 24307871 | | 54.23 | $16,875.70 |
| 07/03 | POS KROGER #0402 503387 3612 N BELT LINE RD IRVING TX 10040203 | | 2.99 | $16,872.71 |
| 07/04 | POS DAS DENTAL GROUP 632965 4492 CAMINO DE LA P SAN YSIDRO CA 49410303 | | 720.00 | $16,152.71 |
| 07/04 | POS BOBAR LIQUOR #5 218698002695 4380 MAIN STREET 10 CHULA VISTA CA 03503304 | | 30.44 | $16,122.27 |
| 07/04 | POS STARS & STRIPES 000000615073 4430 MAIN STREET CHULA VISTA CA 68446901 | | 6.24 | $16,116.03 |
| 07/04 | ATM STARS & STRI 634 006835 4430 MAIN ST CHULA VISTA CA P634553 | | 63.50 | $16,052.53 |
| 07/05 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 7.27 | | $16,059.80 |
| 07/05 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805 699 2040 LawrenceHicks | | 1,128.11 | $14,931.69 |



**MOBILITY**
CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period**
09/01/2022 - 09/30/2022

**Account #**
*********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 09/02 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805 699 2040 LawrenceHicks | | 1,216.28 | $15,159.56 |

54



**MOBILITY** CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period** 10/01/2022 - 10/31/2022

**Account #** ********91

| Tran Date | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 10/01 | Debit GOLDEN CHICK IRVING 668747 (10/01/2022) IRVING TX 88701217 | | 13.59 | $17,723.52 |
| 10/02 | Debit QBE INSURANCE 007513 (10/02/2022) 888-5602745 NY 57302543 | | 16.75 | $17,706.77 |
| 10/03 | ACH Withdrawal TOYOTA ACH RTL 09302022 09302022 LAWRENCE HICKS | | 381.11 | $17,325.66 |
| 10/03 | ACH Withdrawal SHOP YOUR WAY MC AUTO PYMT LAWRENCE E HICKS | | 35.00 | $17,290.66 |
| 10/03 | Debit PAYPAL *EBAY US 765823 4029357733 CA 45472528 | | 8.64 | $17,282.02 |
| 10/03 | Debit PAYPAL *EBAY US 426032 4029357733 CA 45451522 | | 15.10 | $17,266.92 |
| 10/03 | Debit PAYPAL *EBAY US 129131 4029357733 CA 45542338 | | 64.91 | $17,202.01 |
| 10/04 | ACH Deposit TRANSAMERICA LF TPLIC CR HICKS | 146.65 | | $17,348.66 |
| 10/04 | ACH Deposit Ameritas Life In XP04ACH HICKS LAWRENCE | 14.54 | | $17,363.20 |
| 10/04 | ACH Deposit Square Inc * Cash App T1776511 Lawrence Hicks | 100.00 | | $17,463.20 |
| 10/04 | ACH Withdrawal OPENSKY ONLINEPYMT LAWRENCE E HICKS | | 100.00 | $17,363.20 |
| 10/04 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,225.00 | $16,138.20 |

**MOBILITY** CREDIT UNION
Banking Without Boundaries

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

**Statement Period** 11/01/2022 - 11/30/2022

**Account #** ********91

| Tran ate | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| 11/01 | Debit PATHS2FRDM 619239 (11/01/2022) RALEIGH NC 12213268 | | 77.77 | $17,004.58 |
| 11/01 | POS O'REILLY AUTO PA 449500 (11/01/2022) 3425 NORTH BELTLINE IRVING TX 02391302 | | 230.31 | $16,774.27 |
| 11/02 | ACH Withdrawal FFPROPERTIES 114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,359.82 | $15,414.45 |

55



**MOBILITY**
C R E D I T   U N I O N
*Banking Without Boundaries*

P.O. Box 630428 Irving, TX 75063-0428
RETURN SERVICE REQUESTED

| Statement Period | Account # |
|---|---|
| 03/01/2023 - 03/31/2023 | ********91 |

| an te | Description | Deposits | Withdrawals | Balance |
|---|---|---|---|---|
| /01 | POS THE HOME DEPOT # 306061002541 3200 W IRVING BLV IRVING TX 06115064 | | 22.67 | $3,516.32 |
| /28 | Debit BOSTON MARKET 0188 422828 (02/28/2023) IRVING TX 26426130 | | 14.27 | $3,502.05 |
| /02 | POS PAYPAL *MICROSOF 030205179163 San Jose CA 69424885 | | 10.81 | $3,491.24 |
| /02 | ACH Deposit SENTINEL SECURIT PAYABLES HICKS LAWRENCE | 6.47 | | $3,497.71 |
| /02 | ACH Deposit SENTINEL SECURIT PAYABLES HICKS LAWRENCE | 5.50 | | $3,503.21 |
| /02 | ACH Withdrawal FFPROPERTIES-114 WEB PMTS 805-699-2040 LawrenceHicks | | 1,360.00 | $2,143.21 |

56

# CONTENTS

1. COMPLAINT.......................................................................................... Pages  1 – 2

2. Application to Proceed Without Prepaying Fees or Costs...............Pages   3 – 7

3. Civil cover Sheet .................................................................................. Page  8

4.Exhibit A – Contracts and Power of Attorney.......................................Pages  9 --- 42

5.Exhibit B – Notice of Claim, Tender of Paymeent................................Pages 43 – 45

6.Exhibit C – Tender of Payment and Opportunity to Cure ...................Pages 46 – 48

7.Exhibit D –Refusal to Perform, Records of Non-Response..................Pages  49 --51

8.Exhibit E - Past Payments                                    Page  52 --61